**John J. TERRELL, Plaintiff-Appellee,**

v.

**HOUSEHOLD GOODS CARRIERS' BUREAU et al., Defendants-Appellants.**

**No. 73–2090.**

United States Court of Appeals, Fifth Circuit.

May 15, 1974.

Rehearing and Rehearing En Banc Denied June 18, 1974.

Melville C. Williams, Chicago, Ill., Jay H. Brown, Will G. Barber, Austin, Tex., for defendants-appellants.

Jack N. Price, Longview, Tex., Fred B. Werkenthin, Austin, Tex., for plaintiff-appellee.

Before GEWIN, GOLDBERG and IN-GRAHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

This odyssey began a decade ago when appellee John J. Terrell filed a private antitrust·suit against appellant Household Goods Carriers' Bureau and ten of its individual carrier members charging violations of sections one and two of the Sherman Act and seeking treble damages under section four of the Clayton Act.[1]  Terrell complained that a conspiracy to restrain and monopolize commerce between the defendants and Rand McNally and Company, not named as a party, had destroyed his business of computing and selling national mileage guides.  Their arduous and acrimonious journey has carried the adversaries through one libel and two antitrust trials, and now for the second time to this Court.  Here, hopefully, their peregrinations will end.

Most of the details of this voyage have been previously logged,[2] and need not be repeated here.  The libel trial ended inconclusively with a hung jury and a settlement.  The first antitrust trial resulted in a $375,000 jury verdict against both the Bureau and the individual carriers;  the trial court entered judgment on the verdict against the Bureau and judgment notwithstanding the verdict in favor of the individual carriers.  On appeal, a majority of the original panel vacated the judgment against the Bureau and remanded the case for a new trial.[3]  Upon rehearing *en banc,* a majority of this court affirmed the trial court's judgment against the Bureau on the issue of liability, but reversed for a new trial on the issue of damages.  The subsequent trial on damages resulted in a jury verdict against the Bureau for $300,000, which the district court trebled.  The Bureau appeals, and we affirm.

---

1.  15 U.S.C. §§ 1, 2, 15 (1970).

2.  Household Goods Carriers' Bureau v. Terrell, 5 Cir. 1969, 417 F.2d 47, rev'd, 1971, 452 F.2d 152 (*en banc*).

3.  The judgment n. o. v. in favor of the carriers, affirmed unanimously by the original panel, was not further contested.

## I.

Given the length and bitterness of this controversy over the manufacture and sale of national mileage guides, it is certainly not surprising that the parties would disagree on nearly everything about it. For purposes of this appeal, however, they disagree most significantly, and most vehemently, over how to read the road map provided by this Court's previous *en banc* decision.

Appellant Bureau maintains that the *en banc* Court affirmed the initial jury determination that the Bureau had violated the Sherman Act, but commanded retrial on the twin issues of causation and the amount of damages. At the subsequent trial, appellant argues, the evidence on the issue of causation was insufficient to support the jury's verdict in favor of the plaintiff, and therefore the trial court erred in refusing the Bureau's motion for directed verdict and judgment notwithstanding the verdict.

■ We do not reach appellant's sufficiency of the evidence argument, for we agree with appellee that the *en banc* decision establishing liability finally adjudicated the issue of causation, making any subsequent jury verdict on the point irrelevant. Under well-settled principles of law the decision of this court sitting *en banc* at an earlier stage of this same case represents the law of the case. *See* Hodgson v. Brookhaven General Hospital, 5 Cir. 1972, 470 F.2d 729; Gulf Coast B. & S. Co. v. IBEW, Local 480, 5 Cir. 1972, 460 F.2d 105; Love v. Pullman Co., 10 Cir. 1970, 430 F.2d 49; Rachal v. Allen, 5 Cir. 1967, 376 F.2d 999; Prudential Insurance Co. v. Morrow, 5 Cir. 1966, 368 F.2d 813; Lincoln National Life Insurance Co. v. Roosth, 5 Cir. 1962, 306 F.2d 110; 1B Moore's Federal Practice ¶ 0.404 et seq (2d ed. 1974); 9 Moore's Federal Practice ¶ 110.25[2] at 274–75 (2d ed. 1973). As we have noted before,

> [t]he "law of the case" rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise

that . . . it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof.

White v. Murtha, 5 Cir. 1967, 377 F.2d 428, 431.

■■ The reach of the law of the case doctrine is not limitless. The better view, for example, is that even when applicable, the doctrine does not carry the same consequences as the rule of res judicata. *See* 1B Moore's Federal Practice ¶ 0.404[1] at 405–06 (2d ed. 1974). Thus the law of the case rule applies only to issues that were decided, and "does not include determination of all questions which were within the issues of the case and which, therefore, might have been decided." *Id.* at ¶ 0.404[10], p. 572, quoting from Connett v. City of Jerseyville, 7 Cir. 1940, 110 F.2d 1015, 1028. Nevertheless, the doctrine does mean that the duty of a lower court to follow what has been decided at an earlier stage of the case comprehends things decided by necessary implication as well as those decided explicitly. *Id.* at 573.

■ We have also made it clear that the doctrine is not an inexorable command that rigidly binds the court to its former decisions, but rather is an expression of good sense and wise judicial practice. White v. Murtha, *supra*, 377 F.2d at 431; Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir. 1966, 362 F.2d 571, 574. *See* 1B Moore, *supra*, at 573–74. Some circumstances may warrant a re-examination of the earlier decision. For example, the evidence at a subsequent trial may be substantially different, of the controlling authority, in this instance the *en banc* court or the Supreme Court, may have made a contrary decision on the applicable law. White v. Murtha, *supra*, 377 F.2d at 432. Nevertheless, the general rule that an appellate court's decision of

issues must be followed in all subsequent trial or intermediate appellate proceedings in the same case is waived for only the most cogent of reasons and to avoid manifest injustice. *Id.; Poster Exchange, supra*; 1B Moore, *supra,* at 573–74; 9 Moore, *supra,* at 275.

In order to recover treble damages under section four of the Clayton Act,[4] Terrell was required to prove a violation of the antitrust laws by the defendants, an injury to his business resulting from the defendants' wrongful actions, and some indication of the amount of the damage done.[5] Both the fact of damage, or causation, and the amount of damage are questions of sufficiency of the evidence, though the certainty of proof required on each issue differs. As the Supreme Court said in Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544, 548,

> [T]here is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely at-

tributable to the wrong and only uncertain in respect of their amount.[6]

The distinction between the fact of damage and the amount of damage is especially important in a case such as the one *sub judice* in which the injury to plaintiff may have been attributable to several factors, not all of which can be the basis for liability on the part of the defendant. In such a case the plaintiff need not prove that the defendant's wrongful actions were the sole proximate cause of the injuries suffered. He must show only, as a matter of fact and with a fair degree of certainty, that defendant's illegal conduct materially contributed to the injury.[7] Once the important causal link between the actions of the defendant and the injury to the plaintiff has been established, the plaintiff may enter the more uncertain realm of evaluating the portion of the injury that may be attributed to the defendant's wrongful conduct.

The general verdict of the jury in favor of Terrell and the judgment thereon in the first antitrust trial had the effect of findings in favor of Terrell on the three important elements of his case, violation, causation, and amount of damages. Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 560, 51 S.Ct. 248, 249, 75 L.Ed.

4. 15 U.S.C. § 15: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained . . . ."

5. Zenith Radio Corp. v. Hazeltine Research, 1969, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed. 2d 129; Bigelow v. RKO Pictures, 1946, 327 U.S. 251, 263–267, 66 S.Ct. 574, 579–581, 90 L.Ed. 652, 660–661; Hobart Bros. Co. v. Malcolm T. Gilliland, Inc., 5 Cir. 1973, 471 F.2d 894, 901, cert. denied, 412 U.S. 923, 93 S.Ct. 2736, 37 L.Ed.2d 150; Dailey v. Quality School Plan, Inc., 5 Cir. 1967, 380 F.2d 484, 486–487; Martin v. Phillips Petroleum Co., 5 Cir. 1966, 365 F.2d 629, 632. *See generally* Note, Private Treble Damage Antitrust Suits: Measure of Damages for Destruction of All or Part of a Business, 80 Harv.L.Rev. 1566, 1571 (1967).

6. *See* Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir. 1970, 431 F.2d

334, 340, cert. denied, 401 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811; Arthur Murray, Inc. v. Reserve Plan, Inc., 8 Cir. 1969, 406 F.2d 1138, 1149–1150; Dantzler v. Dictograph Products, Inc., 4 Cir. 1962, 309 F.2d 326, 330; Flintkote Co. v. Lysfjord, 9 Cir. 1957, 246 F.2d 368; Momand v. Universal Film Exchanges, 1 Cir. 1948, 172 F.2d 37, 42–44.

7. Weiman Co. v. Kroehler Mfg. Co., 7 Cir. 1970, 428 F.2d 726, 729; Arthur Murray, Inc. v. Reserve Plan, Inc., 8 Cir. 1969, 406 F.2d 1138, 1150; Cherokee Laboratories, Inc. v. Rotary Drilling Services, Inc., 5 Cir. 1967, 383 F.2d 97, 106; Momand v. Universal Film Exchanges, 1 Cir. 1948, 172 F.2d 37, 43. In Haverhill Gazette Co. v. Union Leader Corp., 1 Cir. 1964, 333 F.2d 798, 806, cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343, the court cautioned that the plaintiff need show only that the defendant's wrongful conduct was a "substantial cause" of the injury, not that it was the "sole" or "the most substantial" cause.

544, 547. On rehearing the *en banc* Court did not disturb the jury's conclusion that the Bureau had violated the antitrust laws. Nor did it question the implicit jury finding that this wrongful conduct was a substantial, material contributing cause of harm to Terrell's business. Indeed, the *en banc* Court cited with approval from Judge Coleman's dissent from the decision of the original panel:

> Terrell showed the existence of the monopoly, the vigorous efforts of Household and Rand McNally to preserve that monopoly, that Terrell's directory, so often on the verge of success, was destroyed by his competitors and the monopoly remains intact to the disadvantage of the shipping public.

Household Goods Carriers' Bureau v. Terrell, 5 Cir. 1971, 452 F.2d 152, 160. The Court did, however, express its concern that in calculating the amount of Terrell's damages the jury might have been swayed by improper considerations and might have included elements of injury for which Terrell could not recover from the Bureau.

At the first antitrust trial Terrell attempted to show that certain wrongful actions of the Bureau and the co-conspirators had destroyed his business by preventing him from securing important government business and by causing Rocky Ford Van Lines, a former Bureau affiliate carrier who had switched to Terrell's guide, and the Oil Field Haulers Association (OHA), Terrell's first customer, to return to Bureau guides. A portion of Terrell's case rested on a letter, the subject of the libel suit, in which the Bureau's executive secretary Wyche questioned the reliability and authenticity of Terrell's guides, intimated that use of the new guides might adversely affect the moving industry, and threatened to file a complaint and request for investigation with the I.C.C.

The trial court and the *en banc* Court agreed that the res judicata effect of the libel settlement barred Terrell from recovering any damages for the libelous nature of the Wyche letter. They also agreed that the *Noerr-Pennington* doctrine [8] precluded recovery of damages for business lost as a result of attempts to influence the government officials in the Finance Center of the Department of Defense and the Defense Traffic Management Service. The *en banc* Court concluded, however, that the trial court's prophylactic measures, including a pretrial order and jury instructions, were inadequate "to alleviate [the] very real danger that the jury would apply an improper *measure* of damages." 452 F. 2d at 157–158 (emphasis added). After examining the size of the jury verdict and the other evidence on amount of damages, the Court was unable to overcome its feeling that the jury very possibly assessed damages for libel and the loss of the government business. In short, the Court was concerned, not with the fact of damage, but with the extent of damages where there were several contributing factors.

In a private antitrust suit there is no neat dividing line between the issues of liability and damages. In the words of Judge Aldrich, "[o]ne cannot think of private liability for violation of the antitrust laws except in terms of impact and damage." Haverhill Gazette Co. v. Union Leader Corp., 1 Cir. 1964, 333 F.2d 798, 802, cert. denied, 379 U.S. 931, 85 L.Ed. 329, 13 L.Ed.2d 343. A "finding of damage" would "legally . . . seem a necessary prerequisite" to a "decree of liability . . . labelled final. . . ." *Id.* at 803. The *en banc* decision affirming the original trial court on the issue of liability necessarily encompassed the findings on the legal violation and causation or the fact of damage.[9]

8. *See* United Mineworkers v. Pennington, 1965, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed. 2d 626; Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 1961, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464.

9. In Haverhill Gazette Co. v. Union Leader Corp., 1 Cir. 1964, 333 F.2d 798, cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343, the trial court had entered a "partial final decree" finding antitrust liability and

The *en banc* Court did not, of course, foreclose the possibility that Terrell might be unable to show with the requisite particularity and certainty the amount of damages flowing from the defendant's wrongful conduct. This is a problem inherent in any case in which several factors besides the defendant's wrongful actions may have contributed to the plaintiff's injury. Even if the overall effect be susceptible of reasonably certain measure, it may simply be impossible to identify the quantum attributable to each of the separate strands of cause. This is not to say that the plaintiff may be relieved of his burden of proving the amount of damages, but only that his burden should not be increased by a load he has already successfully shouldered.[10]

█ Our conclusion is that the *en banc* decision affirming the finding of liability was, and is, the law of the case on those issues.[11] Appellant may not now complain of the insufficiency of the evidence on the issue of causation.

## II.

█ The scope of our inquiry on this appeal thus narrowed, we turn to the second phase of appellant's attack on the judgment below. Assuming *arguendo* that causation was proved, Bureau contends, the trial court erred in admitting the testimony and exhibits by

---

granting injunctive and declaratory relief. The court of appeals affirmed in part. The trial court then referred the suit to a special master for a determination of the damages caused by the defendant's wrongful conduct. The trial court affirmed the master's report even though the master had made an independent and fresh appraisal of the factual issues of causation and damages, and had reached findings that did not "square with" the statements made previously by the trial and appellate courts. Faced with the conflicting findings in the earlier decree and the master's report, the court of appeals concluded that the decree of liability had to be *considered as merely interlocutory,* so that the earlier findings on causation would be subject to later revision.

The case *sub judice* is altogether different. The first antitrust trial was not bifurcated, and the court's judgment was in no sense interlocutory. The *en banc* decision cast no doubt on the portion of the trial judgment imposing liability on appellant. Even if we were to conclude, which we most certainly do not, that the jury findings in the trial below on the fact of damage, or causation, were inconsistent *with the earlier decision* on liability, we could hardly decide that the *en banc* decision was subject to later revision, especially when nothing in that decision suggested a need to re-evaluate the issue of causation. And neither explicitly nor implicitly did the *en banc* Court indicate that appellant on re-trial would be free to show that its wrongful conduct caused no harm to Terrell.

10. The trial judge below, who did not preside at the first antitrust trial, outlined by pretrial order the issues to be tried as (1) what wrongful act of the Bureau caused damage to plaintiff's business and (2) the amount of any damages. Appellant argues that because Terrell did not cross-appeal on the issue of the correctness of this order, he cannot now complain of any error, and points to the *en banc* Court's similar holding on a different point, see 452 F.2d at 158 n. 18. We note that Terrell did make timely protest to the trial court about the pretrial order, and on appeal has persisted with the argument that the scope of the trial on damages was too broad. We note also that the pretrial order seems to us to represent a reasonable effort by an able trial judge, unfamiliar with the details of the prior lengthy trial and seemingly uncertain regarding the scope of the *en banc* mandate on remand, to build and protect the best possible record.

11. One final note is necessary regarding the scope of the *en banc* decision. At the damages trial below appellant's chief argument was that the loss of the OHA business was caused by a contract dispute between Terrell and the OHA that was completely independent of any wrongful actions by the Bureau. While the *en banc* opinion is silent on this "independent intervening cause," our study of the record of the first antitrust trial convinces us that the argument was presented, albeit in a more cursory way, to the first jury. *See, e. g.,* Proceedings of 1st Trial at 1273–74. The jury's general verdict in favor of the plaintiff has to be taken as including a rejection of this theory of causation, and nothing in the *en banc* decision undermined this portion of the jury's verdict. In other words, this theory of causation, when urged at the damages trial, did not represent substantially new, different evidence that might cast some shadow of doubt on the *en banc* version of the law of the case.

which plaintiff sought to establish lost profits as a measure of damages [12] because the expert evidence was based on assumed facts shown to be untrue and hence was too speculative. Terrell denies that the expert testimony was based on facts shown to be untrue, and argues that the court acted quite properly in admitting the challenged evidence.

The core of Terrell's evidence on the amount of his lost profits came in the testimony of Walter Bowles, an expert in the marketing and public opinion research business. Using all the evidence available from the first trial as well as his own opinion surveys and a wealth of other data relating to the sale and distribution of mileage guides, Bowles made a market study estimating the size of the total national mileage guide market. He also developed a series of conclusions on which to rely in estimating Terrell's ability to penetrate the market, and calculated that between 1962 and 1975 Terrell could reasonably have expected to sell 115,000 copies of his guide if he had remained in business. Terrell then presented the testimony of a certified public accountant who had prepared a net profit analysis based on actual known expense figures and the actual and projected sales figures adduced by Bowles.[13]

Obviously Terrell's task of proving sales that he never made as a means of calculating his damages was a difficult one. Yet as we have already noted, the plaintiff's burden of estab-

---

12. Appellant argues briefly that the proper measure of damages should have been the "going concern" value of Terrell's business at the time of its alleged destruction. Since the business had never been profitable, in fact had incurred losses of $150,000 or more, appellant maintains that the going concern value was zero and that Terrell should have recovered nothing. Our answer is quite simple: the *en banc* Court specifically approved of the projected lost profits method of computing damages so long as each element of the projection is supported by proven facts. 452 F.2d at 159.

The correctness of that conclusion is hardly open to doubt. To deny recovery to a businessman who has struggled to establish a business in the face of wrongful conduct by a competitor simply because he never managed to escape from the quicksand of red ink to the dry land of profitable enterprise would make a mockery of the private antitrust remedy. Writing for this court in Lehrman v. Gulf Oil Corp., 5 Cir. 1972, 464 F.2d 26, 45, Judge Wisdom said,

Particularly is the calculation of damages difficult when the future profits of an enterprise as young as Lehrman's must be determined, since there is no reliable track record to look back on. But uncertainty cannot end the efforts of the federal courts to redress the harm caused proprietors by violations of the freedom of the marketplace. The wrongdoer must bear the risk of the uncertainty in measuring the harm he causes. Bigelow v. RKO Radio Pictures, Inc., 1946, 327 U.S. 251, 265, 66 S.Ct. 574, 90 L.Ed. 652; Story Parchment Co. v. Paterson Parchment Paper

Co., 1931, 282 U.S. 555, 566, 51 S.Ct. 248, 75 L.Ed. 544. The Supreme Court has recently reminded us that "[t]rial and appellate courts alike must also observe the practical limits of the burden of proof which may be demanded of a treble-damage plaintiff who seeks recovery for injuries from a partial or total exclusion from a market; damage issues in these cases are rarely susceptible for the kind of concrete, detailed proof of injury which is available in other contexts." Zenith Radio Corp. v. Hazeltine Research, Inc., 1969, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129, 148"

We find nothing to the contrary in the principal cases cited by appellant in support of the "going concern" argument. In Albrecht v. Herald Co., 8 Cir. 1971, 452 F.2d 124, for example, the court held that an antitrust plaintiff could not recover both the full present going concern value of his business *and* loss of future profits because the latter would be included in determining the former. The court also explicitly suggested that where there was no other clear evidence of the value of the business as a going concern, expected future profits might be the only reliable method of computing damages.

13. The results of Bowles' study were reflected in plaintiff's exhibit 110, admitted over objection from the Bureau. The net profit analysis, the basis of the dollar damages computation, was introduced, also over defendant's objection, as plaintiff's exhibit 97. These exhibits and the testimony underlying them are the focus of appellant's concern.

lishing the amount of damages is less severe than his burden of proving the fact of damage. Very often the nature of the wrong makes ascertainment of the damages difficult; but the Supreme Court has emphasized that "[i]n such [a] case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544, 548. "[T]he jury may make a just and reasonable estimate of the damage based on relevant data . . . . In such circumstances 'juries are allowed to act on probable and inferential as well as [upon] direct and positive proof.'" Bigelow v. RKO Radio Pictures, Inc., 1946, 327 U.S. 251, 264, 66 S.Ct. 574, 580, 90 L.Ed. 652, 660.

This indirect type of proof may include estimates based on assumptions, at least so long as the assumptions rest on adequate bases. Hobart Brothers Co. v. Malcolm T. Gilliland, Inc., 5 Cir. 1973, 471 F.2d 894, 902; Locklin v. Day-Glo Color Corp., 7 Cir. 1970, 429 F.2d 873, 879, cert. denied, 400 U.S. 1020, 91 S.Ct. 584, 27 L.Ed.2d 632; Herman Schwabe Inc. v. United States Shoe Machinery Corp., 2 Cir. 1962, 297 F.2d 906, cert. denied, 369 U.S. 865, 82 S.Ct. 1031, 8 L. Ed.2d 85 (1962). Appellant complains that Bowles' expert testimony violated this stricture in several respects. First, Bowles incorrectly assumed that Rocky Ford Van Lines had been unable to use Terrell's guide competitively, and that had it been able to do so other household carriers would have bought Terrell's guide in order to compete effectively. Bowles was also ignorant of Terrell's lack of success in selling his guide to other rate bureaus, and therefore erroneously assumed these bureaus were Terrell's prime market. Finally, Bowles mistakenly assumed that Terrell could market at least twice as many guides every other year as the quantity revealed by the evidence.

Appellant has made a spirited attack on Bowles' testimony, and we have read the arguments with great care. Nevertheless, our reading of appellee's responses and our study of the record convinces us that the Bureau has not identified "facts upon which Bowles based his testimony [that] have been proved by undisputed evidence to be untrue." Brief for Appellant at 35. Rather, appellant has demonstrated that Bowles rested his estimates in part on facts that, though in dispute, could from the evidence be found in favor of Terrell and would support the assumptions on which Bowles' opinion evidence was based. See Autowest, Inc. v. Peugeot, Inc., 2 Cir. 1970, 434 F.2d 556, 566.

The factual disputes were squarely presented to the jury trying the case. Counsel for the Bureau cross-examined Bowles vigorously, probing and prying at the bases for his conclusions and estimates. Appellant had ample opportunity to discredit Bowles and show the fallacies in his reasoning or testimony. The jury as fact-finder had the task and responsibility of judging the credibility of the witness, resolving the conflicting evidence, and assessing the weight of the expert testimony. Hobart Brothers Co. v. Malcolm T. Gilliland, Inc., 5 Cir. 1973, 471 F.2d 894, 903; Autowest, Inc. v. Peugeot, Inc., 2 Cir. 1970, 434 F.2d 556, 565. The trial judge instructed the jury,

You should consider such expert opinion and should weigh the reasons, if any, given for it. You are not bound, however, by such an opinion. Give it the weight to which you deem it entitled, whether that be great or sleight, and you may reject it, if in your judgment the reasons given for it are unsound.

Under these circumstances we conclude that Bowles' expert testimony and the exhibits reflecting it were not impermissibly suggestive and were properly admitted by the trial court. Appellant has pointed to no persuasive reason for upsetting the jury's action, and we cannot find that the findings relating to

damages are "beyond the pale of sane judgment." *Hobart Brothers, supra,* 471 F.2d at 903.

### III.

Despite the massive assault mounted by appellant, our review of the judgment below has been necessarily limited by the law of the case established previously by this court sitting *en banc* and by the weight that we must accord a jury's exercise of its responsibilities. Within the narrow field of vision allowed us, we have been unable to detect any significant flaws in the proceedings below. We emphasize that once the causation hurdle has been overcome, the expert on damages need not be armed on the right hand with a slide rule, on the left hand with a computer. He is allowed some economic imagination so long as it does not become fantasy. The judgment of the district court is affirmed.

Affirmed.