FOREMOST–McKESSON, INC.,
Plaintiff-Appellant,

v.

INSTRUMENTATION LABORATORY, INC., et al., Defendants,

American Hospital Supply Corporation, Defendant-Appellee.

No. 74–3636.

United States Court of Appeals, Fifth Circuit.

Feb. 19, 1976.

418

Stephen D. Susman, J. Rufus Wallingford, Houston, Tex., for plaintiff-appellant.

Theodore F. Weiss, Jr., Alan S. Gover, E. William Barnett, Houston, Tex., for defendant-appellee.

Before TUTTLE, GODBOLD and GEE, Circuit Judges.

TUTTLE, Circuit Judge:

■■■ This is an appeal from the granting of a directed verdict for the defendant, American Hospital Supply Corporation (American), after the plaintiff, Foremost-McKesson, Inc. (Foremost), rested its case in an antitrust action against American. Foremost had charged American in one count with violation of Section 1 of the Sherman Act by alleging restraint of trade, and in two counts with violations of Section 2 of the Sherman Act by alleging conspiratorial and individual attempts to monopolize.[1] The trial court granted American's motion for a directed verdict on the ground that Foremost had failed to introduce sufficient evidence of causation on each count to permit sending the case to the jury. Having reviewed the evidence, we affirm.

The test to be used in ruling on a motion for directed verdict is quite clear in this Court:

" . . . [T]he Court should consider all of the evidence . . . but in the light and with all reasonable inferences most favorable to the party opposed to the motion. . . . [I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied . . . . There must be a conflict in substantial evidence to create a jury question."

*Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969) (*en banc*).

The necessity for proof of causation in a private antitrust action is likewise clear. *Zenith Radio Corp. v. Hazeltine,* 395 U.S. 100, 114, 89 S.Ct. 1562, 1571, 23 L.Ed.2d 129 n. 9 (1969) (the illegality must be shown to be "a material cause of the injury"); *Terrell v. Household Goods Carriers' Bureau,* 494 F.2d 16, 20 (5th Cir. 1974) (the plaintiff "must show only, as a matter of fact and with a fair degree of certainty, that defendant's ille-

1. The original suit was brought by Foremost against both American and Instrumentation Laboratory (IL). Foremost sought injunctive relief against IL's planned termination of a Foremost division, Curtin, as one of its distributors. IL had intended to make an American division, Scientific Products, its sole distributor. IL, however, did not terminate Curtin as a distributor and was released from the suit prior to trial.

gal conduct materially contributed to the injury.").

With these rules in mind, we have reviewed the evidence on causation. Appellant Foremost presented four witnesses whose testimony relates to causation. Two had been officers of Curtin Scientific, the Foremost division whose alleged injuries as a result of activities of an American division, Scientific Products, form the basis of the suit. They were James Muller, Curtin's president during the applicable period, and W. T. Brown, Curtin's vice-president of marketing. Foremost also presented an economics expert, Dr. John Allen, and Benjamin Fisher, the president of Fisher Scientific, a major competitor of both Scientific Products and Curtin.

Muller's testimony on direct examination covers some 160 pages; of these, only a handful relate to causation. His basic contention was that by using a combination of exclusives (products which no other company had the right to sell) and all-or-nothing bidding (submitting a list of products with prices but adding that for those prices to be effective the customer had to purchase the whole list), Scientific Products unjustly and illegally caused losses to Curtin. Although he stated that he believed Foremost had submitted documentation of such instances, he could cite no specific case and the alleged documentation has not been called to the Court's attention.

He also complained that Scientific Products offered customers a year-end rebate on all purchases if their volume reached a certain amount, so that customers who had already purchased an expensive exclusive from Scientific Products would be enticed into continuing to buy from them. Yet in only one instance did Muller cite a loss of business to Curtin on a specific contract due to this practice.

In addition to these charges, on cross-examination Muller alleged that Scientif-

ic Products obtained exclusives by putting "pressure" on the manufacturers. Yet the only specific instance he could cite was in the case of Instrumentation Laboratory, Inc. (IL), and his only reason for the allegation of pressure was that "they [IL] said that they had some arrangements—the marketing manager did—which he was not free to talk about." [2]

During cross-examination, Muller again failed to cite any specific instances where illegal practices by Scientific Products caused losses to Curtin except for his references to the contract and the "pressure" mentioned above.

Muller's testimony tended only to establish that Curtin had suffered losses. On cross-examination, evidence was introduced that would support inferences that the losses were caused by the recession in general and particularly by decreased government spending, and by mismanagement of the Curtin operation.

Brown's testimony on causation was equally flawed. Like Muller, he made generalized allegations but was unable to support them with specific documentation. He admitted that Curtin itself used all-or-nothing bidding, and that Curtin had not even sought to acquire distributorships for many of the exclusives held by Scientific Products. This, he explained, was because the practice in the industry was for the manufacturer to seek out the distributor and not vice versa. Yet in one instance he did, albeit unsuccessfully, approach the manufacturer. Moreover, Fisher, in his testimony, spoke of having approached IL for a franchise, which he obtained. [3]

As with Muller, cross-examination brought out facts that would explain Curtin's losses in terms of its own management. To give but one example, an internal report had leveled heavy criticism at management and recommended major changes in selling and marketing.

**2.** In view of our disposition of the case, we need not and do not decide whether the alleged practices violate the Act.

**3.** IL later terminated Fisher Scientific when it decided to make Scientific Products its exclusive distributor.

Benjamin Fisher also testified, by deposition, for Foremost. His testimony was limited to the effect on *his company* of competition by Scientific Products. Further, the only specific practice of Scientific Products that was brought out as causing Fisher difficulty was Scientific's offering price discounts on non-exclusives. Even on that point, Fisher did not testify as to any specific loss of business, but merely stated:

> Well, in my opinion, it has made it difficult for us to have the opportunity to serve the customers' needs because he feels he has a better total deal, including the items that he could get from us.

.    .    .    .    .

> [H]e has a better price level by such an arrangement, and, hence, we don't get the business.

Finally, Dr. John Allen, the economic expert for Foremost, testified extensively as to Curtin's losses. But Dr. Allen admitted on cross-examination that he was not testifying on causation; that is, various causes could have resulted in the same losses.

As we have noted, Foremost's burden in this suit was to present substantial evidence that illegal practices by Scientific Products were a material cause of their injuries. *Zenith Radio Corp. v. Hazeltine,* 395 U.S. 100, 114, 89 S.Ct. 1562, 23 L.Ed.2d 129 n. 9 (1969); *Terrell v. Household Goods Carriers' Bureau,* 494 F.2d 16, 20 (5th Cir. 1974); *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969) (*en banc*). We agree with the trial court that they failed to do so. We recognize that it was not incumbent on Foremost to show that the alleged practices by Scientific Products were the exclusive cause of their losses, but only that they were *a* material cause.[4] Nonetheless, the evidence appellant presented on causation is both scarce and fatally general. Despite having introduced an enormous volume of exhibits, Foremost failed to indicate and document specific

losses of business to Curtin and corresponding gains by Scientific Products, or otherwise to show that their losses were caused by Scientific Products' practices.

In view of our disposition of this issue, it is unnecessary to discuss appellant's other contentions. The judgment is affirmed.

---

4. Correspondingly, of course, for the appellee to show other causes would not, of itself, defeat appellant's cause of action. *Terrell, supra,* 494 F.2d at 20.