CHRYSLER CREDIT CORPORATION, a
corporation, Plaintiff,

v.

J. TRUETT PAYNE, INC., etc., et al.,
Defendants-Third Party
Plaintiffs-Appellees,

v.

CHRYSLER MOTORS CORPORATION, a
corporation, Third Party Defendant-Additional Party Defendant-Appellant.

No. 77–2331.

United States Court of Appeals,
Fifth Circuit.

Dec. 7, 1979.

Rehearing and Rehearing En Banc
Denied Jan. 18, 1980.

J. Ross Forman, III, J. Fredric Ingram, Birmingham, Ala., for third party defendant-additional party defendant-appellant.

C. Lee Reeves, Birmingham, Ala., for defendants-third party plaintiffs-appellees.

Before GODBOLD, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

This is an appeal from a treble damages judgment awarded against Chrysler Motors Corporation for price discrimination in violation of section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act.[1]

From January 1970 through August 1974, the period at issue, Chrysler Motors was a wholly owned subsidiary of Chrysler Corporation, engaged in wholesaling Chrysler-Plymouth automobiles to retail dealerships throughout the country. J. Truett Payne, Inc., was one of four such dealerships in the Birmingham, Alabama, area.

Payne went out of business in May 1974. In September 1974, Chrysler Credit Corporation filed suit for the recovery of certain unrepaid loans. Part of Payne's response was the filing of this price discrimination claim against Chrysler Motors.

Payne alleged that as a result of certain discriminatory sales incentive programs conducted by Chrysler Motors among its dealerships in the Birmingham area, Payne had been forced to pay higher prices for Chrysler automobiles than had its competitors. Payne claimed that because of the higher prices it lost sales and profits, and was eventually forced out of business. Payne sought treble damages under section 4 of the Clayton Act.[2]

---

1. Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), provides in part as follows:

    "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with

any person who either grants or knowingly receives the benefit of such discrimination . . . ."

2. Section 4 of the Clayton Act, 15 U.S.C. § 15, provides as follows:

    "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the

In defense, Chrysler Motors maintained that the sales incentive programs were available on a non-discriminatory basis to all Chrysler dealerships in the Birmingham area, including Payne, and denied that they had had an adverse effect on competition or that they had injured Payne.

The district judge severed trial of this Chrysler Motors issue from trial of the Chrysler Credit issues. Testimony was taken for six days. Chrysler's motions for a directed verdict made at the close of Payne's case and at the close of all the evidence were denied. The jury reached a verdict and award against Chrysler of $111,247.48 (Payne had asked for $180,000), which the court trebled. Chrysler's motion for judgment notwithstanding the verdict or for a new trial was denied, and Chrysler filed this appeal.

■ It is well established that in order to recover treble damages under section 4 of the Clayton Act, a plaintiff must prove (1) a violation of the antitrust laws, (2) cognizable injury attributable to the violation, and (3) at least the approximate amount of the damage. *Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266, 270 (5th Cir. 1979); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 694 (5th Cir. 1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 20 (5th Cir.), *cert. dismissed*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974).

■ We find it unnecessary to consider whether Payne proved that the Chrysler incentive programs violated the Robinson-Patman Act. Because Payne failed to introduce substantial evidence of injury attributable to the programs, much less substantial evidence of the amount of such injury, the district court erred in refusing

Chrysler's motions for directed verdict and in denying Chrysler's motion for judgment notwithstanding the verdict.

## I. Cognizable Injury

To show that Chrysler's incentive programs caused it to lose sales, Payne introduced the unsupported testimony of J. Truett Payne, its owner, that customers and salesmen had told him that the dealership was being undersold, and that some salesmen had quit as a result. Payne also introduced evidence showing that its share of retail Chrysler-Plymouth sales in the Birmingham area was 24% in 1970, 27% in 1971, 23% in 1972, and 25% in 1973. Payne contends that it was proper to infer that the 4% drop in 1972 was a result of the incentive program.[3]

To show lost profits by reason of the programs, Payne introduced only the unsupported testimony of Mr. Payne that he was forced to lower prices in order to meet competition and that for the same reason the dealership had to, or possibly had to, give greater allowances on used-car trade-ins.

In an effort to show that the programs forced the dealership out of business, Payne relied on merely conclusory statements to that effect by Mr. Payne and an expert witness.[4]

■ Under *Boeing Co. v. Shipman*, 411 F.2d 365, 373–77 (5th Cir. 1969) (en banc) (standard for directed verdict and judgment notwithstanding the verdict), this showing was clearly not such as to allow the case to go to the jury. In an antitrust action, as noted above, the plaintiff must show that the defendant's conduct materially contributed to his injury. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114

amount in controversy, and shall recover three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

**3.** Payne also contends that the 2% increase in 1973 was the result of a 1973 revision of the incentive programs that resulted in sales quotas more favorable toward Payne. While it is

true that certain of the incentive programs were so revised, none of these types of programs operated in 1973. The 1973 increase cannot be attributed to their revision.

**4.** The expert prefaced his statement on the issue with the comment, "I really can't tell you without having, you know—it's a hypothetical question."

n.9, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). He must do so "as a matter of fact and with a fair degree of certainty." *Terrell v. Household Goods Carriers' Bureau, supra,* 494 F.2d at 20. Conclusory statements by the plaintiff, without evidentiary support, as to the fact of damage caused by the alleged antitrust violation are not sufficient. Evidence of a slight decrease in market share roughly coincident with the alleged violation is not sufficient either.[5] The plaintiff must put forth substantial evidence. If he fails to do so, the defendant is entitled to a directed verdict. *See, e. g., Comfort-Trane Air Conditioning Co. v. Trane Co.,* 592 F.2d 1373, 1383 (5th Cir. 1979); *Yoder Brothers, Inc. v. California-Florida Plant Corp.,* 537 F.2d 1347, 1371 (5th Cir. 1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977); *Foremost-McKesson v. Instrumentation Laboratory,* 527 F.2d 417, 418–20 (5th Cir. 1976); *Shumate & Co. v. National Ass'n of Securities Dealers, Inc.,* 509 F.2d 147, 153 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975).

Payne maintains on this appeal that in a section 2(a) case mere proof of the alleged price discrimination is sufficient to establish injury by reason of an antitrust violation entitling the plaintiff to damages. This Robinson-Patman "automatic damages" concept, as it has come to be called, has some precedential support. *See Fowler Manufacturing Co. v. Gorlick,* 415 F.2d 1248 (9th Cir. 1969), *cert. denied,* 396 U.S. 1012, 90 S.Ct. 571, 24 L.Ed.2d 503 (1970); *Elizabeth Arden Sales Corp. v. Gus Blass Co.,* 150 F.2d 988, 996 (8th Cir.), *cert. denied,* 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467 (1945). But we decline to follow it. As the Supreme Court ruled in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), the antitrust laws do not provide a damages remedy for all losses traceable to conduct violating the antitrust laws, only for losses that are part of the anticompetitive effect of such conduct. When a seller charges different prices to different purchasers, as alleged here, injury to competition does not necessarily result. Both the statute and the courts recognize this. 15 U.S.C. § 13(a). *See, e. g., United States v. United States Gypsum Co.,* 438 U.S. 422, 450, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). Competition is harmed only to the extent that the favored purchaser, by use of the discriminatory price difference, actually draws sales or profits from his unfavored competitor. *See, e. g., Enterprise Industries, Inc. v. Texas Co.,* 240 F.2d 457 (2d Cir.), *cert. denied,* 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957); *Uniroyal, Inc. v. Jetco Auto Service, Inc.,* 461 F.Supp. 350, 357–59 (S.D.N.Y. 1978); *McCaskill v. Texaco, Inc.,* 351 F.Supp. 1332, 1341 (S.D.Ala.1972), *aff'd sub nom. Harrelson v. Texaco, Inc.,* 486 F.2d 1400 (5th Cir. 1973); Handler, *Changing Trends in Antitrust Doctrines,* 77 Colum.L. Rev. 979, 992–93 (1977). *See also Perkins v. Standard Oil Co.,* 395 U.S. 642, 648–49, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969) (implying that disfavored purchaser must show more than mere price difference to recover damages). As discussed above, there is no evidence, much less substantial evidence, that such was the case here.

Payne's reliance on *FTC v. Morton Salt Co.,* 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196 (1948), and its progeny is misplaced. In *Morton Salt,* the Supreme Court held that a violation of Robinson-Patman Act § 2(a) may be inferred from a substantial price difference. 334 U.S. at 46–47, 68 S.Ct. 822. But the showing necessary to establish a section 2(a) violation is not the same as the showing necessary to support a private action for damages. The Robinson-

---

5. *Cf. Feminist Women's Health Center, Inc. v. Mohammad,* 586 F.2d 530, 547 (5th Cir. 1978), *cert. denied,* —— U.S. ——, 100 S.Ct. 262, 62 L.Ed.2d 180 (1979) (decrease in income, without more, does not establish fact of damage). In this case, as Mr. Payne himself testified, there was evidence that the material cause of the 4% decrease in market share Payne experienced in 1972 was the relocation of a competing Chrysler-Plymouth dealer into Payne's immediate sales area, and not the Chrysler incentive programs.

Patman Act is an incipiency statute.[6] Price discrimination which threatens competition but which has not caused any actual competitive injury may be held to violate the statute even though it will not support an action for damages. *See* Areeda, *Antitrust Violations Without Damage Recoveries*, 89 *Harv.L.Rev.* 1127, 1127–28 (1976). *See also Gottesman v. General Motors Corp.*, 436 F.2d 1205, 1210 (2d Cir.), *cert. denied*, 403 U.S. 911, 91 S.Ct. 2208, 29 L.Ed.2d 689 (1971) (private injury does not necessarily accompany public injury). What *Morton Salt* found inferable from a substantial price difference was a threat to competition sufficient to violate the statute. 334 U.S. at 46–47, 68 S.Ct. 822. Even assuming that *Morton Salt* is still viable, it is of no help to Payne. In order to recover damages, Payne had to show more than just a threat of antitrust injury. As discussed above, it failed to do so.

## II. Amount of Damage

Our conclusion that Chrysler was entitled to a directed verdict is buttressed by Payne's failure to adequately prove the amount of its alleged injury.

Payne relied on its calculation of the alleged price discrimination to establish the amount of its alleged lost sales and profits. There is no necessary correlation, however, and Payne failed to establish one.

To indicate the going concern value of the dealership at the time it was allegedly forced out of business, Payne relied on two alternative methods of calculation. Under the first, Payne's expert assumed a good will value for the dealership of $52,000 in 1955 and appreciated this amount over 20 years at an annual rate of 4%. The expert testified that the $52,000 figure was not based on an examination of Payne's financial statements. It represented an unsupported estimate by Mr. Payne. The 4% rate was a rough average of the prevailing inflation and prime interest rates from 1955 until the time Payne folded. Under the second method, Payne's expert discounted projections of what the dealership's profits would have been if it had continued in business free of the incentive programs. The expert testified that he did not take into account local market changes or conditions. The projections were apparently nothing more than some of Payne's past earnings roughly adjusted according to Chrysler's performance nationwide or the performance of the automobile industry in general. If Chrysler or the industry had a good year it was assumed, without an explanation why, that Payne would have a good year also.

■ As was the case with Payne's fact of damage evidence, this showing was clearly not such as to allow the case to go to the jury. In an antitrust damages action, as noted above, the plaintiff must establish the amount as well as the fact of damage. The burden of proving the amount of damage is less severe than the burden of proving the cognizable injury. *See, e. g., Story Parchment Co. v. Patterson Parchment Co.*, 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544 (1931); *Terrell v. Household Goods Carriers' Bureau, supra*, 494 F.2d at 23–24. But the plaintiff must put forth substantial evidence. The burden is not satisfied by mere speculation or guess work. *See, e. g., Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 66 S.Ct. 815, 90 L.Ed. 1040 (1946); *Keener v. Sizzler Family Steak Houses*, 597 F.2d 453, 457 (5th Cir. 1979). Payne failed to meet this burden. A price difference without more does not indicate the amount of lost sales or profits. Self-serving and unsupported assumptions cannot sustain a calculation of going concern value. On this ground as well, Chrysler was entitled to a directed verdict. *See, e. g., Kestenbaum v. Falstaff Brewing Corp., supra*, 514 F.2d at 695; *Copper Liquor, Inc. v. Adolph Coors Co.*, 506 F.2d 934, 953–55 (5th Cir. 1975).

The district court is directed to enter judgment for Chrysler.

**REVERSED AND REMANDED WITH DIRECTIONS.**

---

6. Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), proscribes price discrimination "where the effect of such discrimination *may* be substantially to lessen competition . . . ." (Emphasis added).