**COOL INSULATION, INC., Plaintiff,**

v.

**OWENS–CORNING FIBERGLASS CORP., n/k/a Owens–Corning and Williams Consolidated, Inc., Defendants.**

**No. SA–97–CA–138 HG.**

United States District Court,
W.D. Texas,
San Antonio Division.

Dec. 8, 1998.

Order Granting Clarification
Dec. 29, 1998.

Order Denying Reconsideration
Jan. 25, 1999.

Richard J. Karam, Law Offices of Richard J. Karam, San Antonio, TX, Bill Palmer, Attorney at Law, Boerne, TX, Robert J. Barrera, Nicholas & Barrera, San Antonio, TX, Paul N. Bartlett, Jr., Law Office of Paul Bartlett, Jr., San Antonio, TX, for Cool Insulation, Inc., plaintiff.

Rand J. Riklin, Goode Casseb Jones Riklin, Choate & Watson, P.C., San Antonio, TX, Joseph Casseb, Goode Casseb Jones Riklin, Choate & Watson, P.C., San Antonio, TX, John Charles Ertman, William I. Sussman, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for Owens–Corning Fiberglas Corporation, defendant.

Stephen P. Allison, Haynes & Boone, San Antonio, TX, for Williams Consolidated, Inc., defendant.

## ORDER

H.F. GARCIA, District Judge.

On this day, the Court considered the motion filed by Defendants Owens–Corning and Williams Consolidated, Inc. for summary judgment on the Robinson–Patman Act claims made by Plaintiff Cool Insulation, Inc. Having considered the same, and the response of the plaintiff, the Court is of the opinion that the motion should be GRANTED.

## BACKGROUND

From 1993 through 1996, the period at issue, Cool Insulation, Inc. ("Cool") and Williams Consolidated, Inc. ("Williams") were engaged in the business of insulation contracting in and around Austin, Texas. Insulation contractors install insulation for builders of commercial and residential buildings, and engage in a competitive bidding process for the right to install insulation on a particular project or development.

Insulation contractors can purchase insulation from several national manufacturers, including Owens Corning ("Owens"), Certain Teed Corporation, and Johns Manville, as well as two regional manufacturers, Knauf Insulation and Guardian Insulation. During the 1993–96 time period, both Cool and Williams purchased insulation from Owens. However, Cool stopped buying insulation from Owens in mid–1996, and now purchases the majority of its insulation from CertainTeed Corporation. Williams, on the other hand, continues to primarily purchase insulation from Owens.

This action, filed by Cool, alleges that Owens offered Williams better prices and other sales advantages, in violation of the Robinson–Patman Act, that resulted in Cool losing several insulation contract bids to Williams between 1993 and 1996. Yet, for the reasons set forth below, the court finds that Cool's claims must fail as a matter of law.

## SUMMARY JUDGMENT STANDARD

Under Rule 56, the party moving for summary judgment must come forward with an initial showing that it is entitled to judgment. *S & W Const. v. Dravo Basic Materials Co.*, 813 F.Supp. 1214, 1218 (S.D.Miss.1992). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the movant makes a properly supported motion, the

burden shifts to the nonmovant to demonstrate the existence of a genuine dispute. Under Rule 56(e), "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When summary judgment is requested in the context of antitrust litigation, adherence to this standard is appropriate. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## ALLEGED VIOLATIONS OF THE ROBINSON–PATMAN ACT

■ In order to recover treble damages under § 4 of the Clayton Act, "a plaintiff must prove (1) a violation of the antitrust laws, (2) cognizable injury attributable to the violation, and (3) at least the approximate amount of the damage." *Chrysler Credit Corp. v. J. Truett Payne Co., Inc.*, 670 F.2d 575, 579 (5th Cir.1982) (citing *Malcolm v. Marathon Oil Co.*, 642 F.2d 845, 852 (5th Cir.1981); *Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266, 270 (5th Cir.1979); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 694 (5th Cir.1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 20 (5th Cir.), *cert. dismissed*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974)). The antitrust violation alleged in this case is unlawful price discrimination affecting secondary line competition, "that is, price discrimination by the seller which affects competition among its buyers." *Id.* As to secondary line competition, § 2(a) of the Robinson–Patman Act "prohibits price discrimination between different purchasers of commodities of like grade and quality 'where the effect of such discrimination may be substantially to lessen competition ... or to injure, destroy, or prevent competition' among the purchasers." *Id.* (quoting 15 U.S.C.A. § 13(a)). "The reasonable possibility of substantially lessen-

ing competition ... requir[es] the plaintiff to prove that the result of the price discrimination 'is likely to be a severe, adverse effect on competition.'" *Id.* (quoting *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1144 (5th Cir.1973) (en banc)). Consequently, in order to show a violation of § 2(a), "plaintiff must demonstrate that the likely effect of the alleged price discrimination was to allow a favored competitor to draw significant sales or profits away from him, the disfavored competitor." *Id.* (citations omitted).

■ Cool recognizes that in order for there to be discrimination between purchasers violative of § 2(a) "'there must be actual sales at two different prices to two different buyers.'" *M.C. Mfg. Co., Inc. v. Texas Foundries, Inc.*, 517 F.2d 1059, 1065 (5th Cir.1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976) (quoting *Jones v. Metzger Dairies, Inc.*, 334 F.2d 919, 924 (5th Cir.1964), *cert. denied*, 379 U.S. 965, 85 S.Ct. 659, 13 L.Ed.2d 559 (1965)). In pursuing that claim, Cool asserts that Williams was granted lower prices on various materials by Owens than those granted to Cool, thus allowing Williams to secure more jobs. However, in a strikingly similar case, the court dismissed a Robinson–Patman Act claim. *See Olympia Co., Inc. v. Celotex Corp.*, 597 F.Supp. 285 (E.D.La.1984), *aff'd & remanded on other grounds*, 771 F.2d 888 (5th Cir.1985), *cert. denied*, 493 U.S. 818, 110 S.Ct. 73, 107 L.Ed.2d 39 (1989). In *Celotex*, Olympia, a roofing contractor, claimed that it was the losing bidder on a number of projects in the New Orleans area because Celotex, a roofing materials manufacturer, was offering Olympia's competitor, Standard–Taylor Industries, Inc., more favorable prices. Holding that no violation of the Robinson–Patman Act was implicated, the court stated:

> ... the Act protects purchasers in competition with one another at the time of the purchases; it is irrelevant that the companies may have entered into com-

petitive bidding, or that the successful bidder was ultimately able to obtain prices below those offered to its competitors in the bidding process.

*Olympia Co.*, 597 F.Supp. at 297 (citation omitted). Thus, even if Owens sold to Williams at prices below those offered to Cool in the bidding process, there was no violation.

Likewise, in *S & W Const.*, the court held that although S & W Construction and Materials Co., Inc. and Coast Materials were competitive bidders on three street projects in the City of Gulfport, Mississippi, they were not competitive "purchasers" as required by the Robinson–Patman Act because S & W could have received the business for those jobs only if Coast had first defaulted. *S & W. Const.*, 813 F.Supp. at 1220. It was the bids in competition, not the subsequent sales. *Id. See M.C. Mfg.*, 517 F.2d at 1066–68 (both plaintiff and plaintiff's rival were bidding for a government contract; rival was low bidder and purchased from defendant; plaintiff and its rival not "purchasers in competition" because only the one winning the government contract would buy). Consequently, bids alone cannot form the basis for Cool's Robinson–Patman Act claim. *S & W Const.*, 813 F.Supp. at 1220. Once Williams was awarded a bid, and became the primary contractor, it was assured of the right to fulfill the requirements of the job regardless of any discrepancy in the prices later charged Williams or any competitor, including Cool. *Id.* This conclusion is further supported by the fact that the affidavit of Kevin Weinrich no where states that Cool purchased insulation from Owens for the "lost jobs" in the tables prepared by Dr. Hubble.

■ Additionally, under Robinson–Patman, " '[i]njury to a competitor is not the test; the test is injury to competition.' " *Id.* (quoting *Lloyd A. Fry Roofing Co. v. F.T.C.*, 371 F.2d 277, 281 (7th Cir.1966)). Injury to competition is usually shown in either of two ways: proof of lost sales or profits. *See Falls City Indus. Inc. v. Van-*

*co Beverage, Inc.*, 460 U.S. 428, 434–35, 103 S.Ct. 1282, 1288, 75 L.Ed.2d 174 (1983); *Rose Confections, Inc. v. Ambrosia Chocolate Co.*, 816 F.2d 381 (8th Cir.1987). In this case, however, there is no direct evidence of lost sales or profits caused by discriminatory pricing. First, there is no evidence before the court that had Owens not given Williams a "low" price on the numerous projects cited in Dr. Hubbard's tables, Cool would have received the project as the alternate bidder. Nor is there evidence that without these allegedly "low" prices Williams would not have received the bid, or would have possibly defaulted on the project. Yet, there is evidence that neither Cool nor Williams submitted the chosen bid on several of the projects, thus rendering the two nothing more than competing bidders. (*See Affidavit of Robert Sullivan* ). Such contentions are too speculative to satisfy the requirements of the Robinson–Patman Act.

Second, it appears from the record that during the 1993–96 time period, Cool's total revenue more than doubled ($4.80 million to $11.96 million), its gross profits increased ($1.32 million to $2.34 million), and its net profit more than tripled ($16,-000 to $56,000). The Act does not outlaw price discrimination per se, but only price discrimination which presents a reasonable probability that competition will be substantially lessened or injured. *S & W Const.*, 813 F.Supp. at 1221 (citations omitted). "[I]t is essential to the establishment of the violation [of the Act] ... that there be a causal relationship between the price discrimination to the favored customer and the factor relied upon as evidencing an actual or reasonable probable substantial lessening of the ability to compete on the part of the unfavored customer[ ]." *American Oil Co. v. FTC*, 325 F.2d 101, 104 (7th Cir.1963), *cert. denied,* 377 U.S. 954, 84 S.Ct. 1631, 12 L.Ed.2d 498 (1964). The numbers cited above do not seem to indicate any lessening of Cool's ability to compete, and Cool has produced no evidence linking any discriminatory prices to

sales or jobs obtained by Williams, absent the allegations set forth by Cool.

■ Cool's request for future damages is also not actionable. A seller cannot violate § 2(a) unless it has sold similar commodities to at least two different purchasers. "The term 'purchaser' means a buyer or vender, not merely one who seeks to purchase." *M.C. Mfg.*, 517 F.2d at 1065 n. 11 (citations omitted). Thus, alleged refusals to deal or supply are not actionable, even if such refusals are discriminatory. *S & W Const.*, 813 F.Supp. at 1223 (citations omitted). In addition, discriminatory price quotes or offers to sell at discriminatory prices are likewise not actionable. *See, e.g., Chatham Brass Co. v. Honeywell, Inc.*, 512 F.Supp. 108, 113–14 (S.D.N.Y.1981); *J.W. Burress, Inc. v. JLG Indus., Inc.*, 491 F.Supp. 15, 17–19 (W.D.Va.1980). Therefore, these claims are insufficient as a matter of law.

■ With respect to Cool's claims under § 2(f) of the Robinson–Patman Act, the Court agrees with the defendants assertion that liability under § 2(f) is limited to price discrimination "prohibited by this section," and since only § 2(a) and (b) deal with seller liability for price discrimination, a buyer, under § 2(f)'s plain meaning cannot be liable if a prima facie case cannot be established against a seller or if the seller has an affirmative defense. *Great Atlantic & Pacific Tea Co., Inc. v. Federal Trade Comm'n*, 440 U.S. 69, 76–78, 99 S.Ct. 925, 931–32, 59 L.Ed.2d 153 (1979) (citations omitted); *see also Automatic Canteen Co. of America v. FTC*, 346 U.S. 61, 73 S.Ct. 1017, 97 L.Ed. 1454 (1953). In either event, there is no price discrimination "prohibited by this section." Likewise, the legislative history of § 2(f) confirms the conclusion that buyer liability under § 2(f) is dependent on seller liability under § 2(a). *Id.* Therefore, by finding no violation of § 2(a), the Court must dismiss any claims under § 2(f).

Cool's claims under § 2(d) and (e) also fail. The competing purchaser require-

ment applies under these sections, and as the requirements of *M.C. Mfg.* are not met, there can be no recovery. *See Grandstaff v. Mobil Oil Corp.*, 1978 WL 1458 (E.D.Va.1978). As in *Grandstaff*, the two competing entities (here Cool and Williams) were only competing as prospective purchasers, because the actual competition was to become a supplier of insulation for a particular job. Thus, once the bid of one or both were rejected, the parties were no longer "in 'actual functional' " competition. *Id.* (citations omitted).

Finally, § 2(c) has been applied to two types of situations: (1) cases involving "dummy" brokerage payments, *see, e.g., FTC v. Henry Broch & Co.*, 363 U.S. 166, 80 S.Ct. 1158, 4 L.Ed.2d 1124 (1960); and (2) commercial bribery cases, *see, e.g., Rangen, Inc. v. Sterling Nelson & Sons*, 351 F.2d 851 (9th Cir.1965). Unfortunately, other than the allegations set forth in the complaint, the plaintiff has given the Court nothing indicating the presence of a genuine question. In addition, it is necessary that Cool show the same actual anticompetitive injury to itself for its § 2(c) claim as they would for their § 2(a) claim. *Abernathy v. Bausch & Lomb Inc.*, 97 F.R.D. 470, 476 (N.D.Tex.1983). This means that Cool would have to show that they were in competition with a large quantity purchaser (i.e., Williams), and that their business was injured by the price benefit those purchasers received. *Id.* However, as stated previously, Cool and Williams were competitive bidders, not purchasers, and there is no proof that had Williams or another had not received the jobs in the Hubbard tables, Cool would have been the beneficiary.

## CONCLUSION

Therefore, for the aforementioned reasons, the Court concludes that Cool and Williams are not competitive purchasers for the purposes of the Robinson–Patman Act, and as such, the motion for summary judgment filed by the defendants should be GRANTED.

**768**

## ORDER

On this day, the Court considered the motion by Defendant Owens–Coming for clarification regarding the filing of its motion for summary judgment on the Sherman Act claims. Having considered the same, and the response of the plaintiff, the Court finds that the motion should be GRANTED, and Owens–Coming is permitted to make use in this action the deposition testimony of Mr. Kevin W. Weinrich, as a non-party, in *Pan Am Distributing, Inc. v. Owens–Corning Fiberglas Corp., et al,* No. 90–CI–12132 (285th Dist. Ct. Bexar Co., TX).

## ORDER

On this day, the Court considered Defendant Owens Coming's Motion for Summary Judgment on Plaintiff's Sherman Act Claim (docket # 66), Plaintiff's Motion for Reconsideration of the Court's Ruling on Defendant's Motion for Summary Judgment on Plaintiff's Robinson–Patman Act Claims (docket # 64), and Plaintiff's Motion to Compel Production of Documents and for Entry of Protective Order (docket # 63). Having considered the same, and any and all responses thereto, the Court hereby ORDERS:

(1) Defendant Owens Coming's Motion for Summary Judgment on Plaintiff's Sherman Act Claim is DENIED;

(2) Plaintiff's Motion for Reconsideration of the Court's Ruling on Defendant's Motion for Summary Judgment on Plaintiff's Robinson–Patman Act Claims is DENIED; and

(3) Plaintiff's Motion to Compel Production of Documents is GRANTED, in as much as it applies to those documents relevant to the Sherman Act Claim. The Motion for Protective Order is DENIED WITHOUT PREJUDICE, and the parties are free to reassert the motion should they feel it necessary to protect documents which may have to be given to the other side in response to the Sherman Act Claim.

IT IS SO ORDERED.