**AMERICAN CAN CO. v. BRUCE'S JUICES, Inc.**

No. 13037.

United States Court of Appeals Fifth Circuit.

March 30, 1951.

Gerhard A. Gesell, Wm. M. Aiken, Washington, D. C., John M. Allison, Tampa, Fla., for appellant.

Cody Fowler, R. W. Shackleford, Tampa, Fla., for appellee.

Before McCORD, BORAH and RUSSELL, Circuit Judges.

McCORD, Circuit Judge.

Bruce's Juices, Inc., a Florida corporation, brought this suit against American Can Company, a New Jersey corporation, to recover treble damages for injuries sustained as a result of defendant's alleged violations of Sections 2(a) and (e) of the Clayton Act, as amended by the Robinson-Patman Act. See Title 15 U.S.C.A. §§ 13 and 15.

The complaint, as amended, in substance charges defendant with having engaged in unlawful discriminations in the granting of: (1) unjustified quantity discounts on the sale of cans to plaintiff's larger competitors; (2) an unlawful "runway allowance" to a particular competitor of plaintiff, Morgan Packing Company; and (3) an unjustified and secret lower price on a particular type can, called the "3.12 Iscan", to another of plaintiff's competitors, Engelman Gardens of Texas, while denying such lower price, or its equivalent, to plaintiff.

Defendant, in answer, sought to justify its quantity discount pricing system as having been established in good faith and based on actual savings in the sale of cans. It attempted to justify its "runway allowance" to Morgan Packing Company on the basis of savings in the expense of delivery. Defendant affirmatively denied any price discrimination, either secret or otherwise, with respect to the "3.12 Iscan" sold to Engelman Gardens.

The case was tried by the district court without a jury. After a lengthy trial, during which voluminous record testimony as well as much documentary evidence was introduced, the court made detailed and elaborate findings of fact and conclusions of law, and filed a later opinion[1] in which it found that defendant had actually engaged in the violations and unlawful discriminations charged, and had thereby caused plaintiff to suffer damages in the minimum sum of $60,000. The court thereupon awarded judgment for plaintiff in the amount of $180,000, without interest, this sum representing treble the amount of actual damages under the statute, plus stipulated attorneys' fee of $35,000, making the aggregate judgment $215,000.

The material facts, which we have carefully dredged up from the voluminous record, reveal that plaintiff, during the period here involved, was a Florida canning corporation, with office and principal place of business at Tampa, Florida. J. Adams Bruce, who incorporated the plaintiff in 1928 and became its president and principal stockholder, was a pioneer in the canning of citrus juice. When he first entered the trade in 1926 he had personally sold and delivered citrus juice to his customers in milk bottles. Largely as a result of his efforts, and the fact that canned citrus juice was well received by the public, the business prospered and grew.

Defendant is the world's largest manufacturer of cans. Its average annual volume of sales has exceeded $96,000,000 during the years here involved. For many years it has maintained and operated plants which manufacture cans in over twenty states, as well as in Alaska, Hawaii and Canada. One of its plants is located in Tampa, Florida, where plaintiff, Bruce's Juices, Inc., is also situated.

Plaintiff's average purchases of cans from defendant during the period involved amounted to about $350,000.00 per year. Defendant also sold cans under exclusive contracts, which were practically identical to the contract it had with plaintiff, to many of plaintiff's competitors in the grocery can trade, including California Packing Corporation, Stokely Brothers,

Hawaiian Pineapple Company, Ltd., Libby, McNeil & Libby, Morgan Packing Company and The Great Atlantic and Pacific Tea Company. These competitors were supplied from plants of defendant located throughout the United States, and they were among defendant's largest customers, California Packing Corporation alone purchasing more than $7,000,000 worth of cans per year. Both California Packing Corporation and Stokely Brothers have plants at Tampa, Florida, and during the period under consideration they bought from defendant's Tampa plant approximately the same number of cans purchased by the plaintiff. Defendant also manufactured and sold cans to two of plaintiff's largest competitors in the "Iscan" trade, Engelman Gardens of Texas and Morgan Packing Company of Indiana.

Prior to the enactment of the Robinson-Patman Act on June 19, 1936, defendant had granted quantity price discounts to its largest customers as high as 14%, and had kept no record of the cost of selling its customers or classes of customers. Upon the passage of that Act, and after some investigation, defendant placed into force and effect a quantity price discount schedule which, in substance, allowed a 5% discount to a few of the largest customers who were able to purchase cans in excess of $7,000,000 annually, and a sliding scale of discounts ranging from 1% to 5% to those customers who could buy between $500,000 and $7,000,000 worth of cans annually, but allowed no discount whatever to the great majority of defendant's customers, who were unable to purchase more than $500,000 worth of cans annually.[2] These discounts remained in effect from June 19, 1936, through 1942.

It was shown that in granting quantity discounts the defendant did not adhere to the various brackets of its quantity discount schedule. To the contrary, it began to divide and classify all of its customers into three groups designated as "A", "B" and "C". The "A" group comprised those customers whose purchases equaled or exceeded $7,000,000 annually; the "B" group included those customers whose purchases ranged from $500,000 to $7,000,000 annually; and the "C" group included the vast majority of remaining customers whose annual purchases fell below $500,000. Thus, for all practical purposes, the above grouping of defendant's customers was based almost entirely on the annual volume of their respective purchases, and was in no wise governed by the actual cost of selling customers. As a result of the above discount system, 98% of defendant's customers were not permitted to receive any discount whatever, and out of the remaining 2% who qualified for a discount only three customers received the 5% discount during any of the years in question.

It was further shown that under the system and group classification provided for in defendant's quantity discount schedule, its larger customers were permitted to pool or aggregate their purchases from their various plants all over the country, and that the price discounts granted were based upon the gross amount of pooled purchases. This privilege of the larger can purchasers seriously handicapped plaintiff, as an individual canner operating only one plant, and placed it at an economic disadvantage. It enabled them to purchase the cans they needed at a lower price than plaintiff and other small independent canners.[3]

2. Specifically the quantity discount schedule provided as follows:

| Annual Purchases | Discount allowed |
| --- | --- |
| $7,000,000 or over | 5% |
| 5,000,000 to $7,000,000 | 4% |
| 3,000,000 to $5,000,000 | 3% |
| 1,0000,000 to $3,000,000 | 2% |
| 500,000 to $1,000,000 | 1% |
| Under $500,000 | None |

3. For example, Tampa, Florida is the site of plaintiff's cannery, a cannery of California Packing Corporation and one of Stokely Brothers. Each of these canneries bought cans from defendant under identical contracts. The annual purchase of each of these three canneries was approximately equal. Plaintiff received no discount during the period in dispute, with the exception of a 1% discount in 1939. California Packing Corporation received a 5% discount as a result of being permitted to pool its purchases, and Stokely Brothers received a discount of between 3% and 4% for the same reason. The economic advantage thus derived over plaintiff by these competitors is patent.

With regard to the alleged unlawful "runway allowance", it was shown that the cannery of Morgan Packing Company at Austin, Indiana, was connected with a plant of the defendant by means of a runway; that this runway could effect savings in transportation sufficient to justify a lower price only if the cans so transported were manufactured at defendant's plant at Austin, Indiana; that defendant nevertheless allowed the Morgan Packing Company a discount of 45¢ per thousand on all cans carried on the runway, although the evidence reveals that a substantial number of grocery cans and all of the Iscans were manufactured in plants of the defendant located at points other than Austin, Indiana; that there was no justification for the runway allowances on cans manufactured at other places than Austin, Indiana; that the defendant allowed Morgan Packing Company quantity discounts on its aggregate purchases and thereafter deducted substantial runway allowances; and that the granting of the runway allowance to this competitor resulted in actual and substantial injury to plaintiff.

About the year 1937 plaintiff began to sell fruit juices in small cans, called "Iscans". These "Iscans" were all of the same diameter, 2.02 inches, but varied in height from 3.00 inches to 3.14 inches. Citrus juice was poured into these small Iscans and sold in competition with bottled beverages from soft drink outlets.

In the Fall of 1938 plaintiff inaugurated an extensive promotional and advertising campaign to sell citrus juices in Iscans in Alabama, Mississippi, Georgia and Florida, which states were referred to as the Southern area. The product was well received and a large volume of citrus juice was sold during that year. In the following year plaintiff instituted a similar sales promotional campaign in Texas, Louisiana and Arkansas, which states were designated as the West area, and also attempted to develop Tennessee, North Carolina, Kentucky and the trade area around St. Louis, Missouri, known as the North area. Plaintiff had no appreciable success in its efforts to develop the latter two areas, and in fact suffered substantial loss.

The evidence conclusively reveals that plaintiff's losses as a result of its attempt to develop its West and North sales areas, and the injury to its business in other areas was the result of competition from two other citrus juice canners, Engelman Gardens of Texas and Morgan Packing Company of Indiana. These two competitors had received from the defendant special discounts on the price of a particular type Iscan which had been denied to plaintiff. This discrimination in favor of plaintiff's above named competitors was manifestly harmful to plaintiff's business, for the reason that the cost of the juice cans represented a large percentage of the total cost of the citrus product, and the discriminatory higher price paid by plaintiff for an Iscan of like grade and quality diminished its profits and helped destroy its financial ability to withstand competition.

It was shown that in September, 1939, defendant reduced the price of its 3.12 Iscan out of proportion to all other Iscans which it sold. It was offered for sale by defendant to Engelman Gardens at a price even lower than the next smaller Iscan, the 3.09. This was contrary to defendant's previous policy of pricing its Iscans upon the basis of their height alone, since the diameters of all Iscans were the same. Moreover, after granting the lower and more favorable price to plaintiff's competitor, Engelman Gardens, and thereby placing plaintiff at a competitive disadvantage with respect to the sale of its canned juice products, defendant thereafter extended credit in the amount of $400,000 to Engelman Gardens to help stimulate its business.

After the sale of the 3.12 Iscan at the favorable low price to Engelman Gardens in September, 1939, there were no further sales of this type Iscan at the discriminatory price to plaintiff's competitors until June, 1940, when Morgan Packing Company was also permitted to purchase the 3.12 Iscan at the same low price in order to enable it to enter the Iscan trade at its plant in Austin, Indiana.

When plaintiff discovered the disproportionate lower price on the 3.12 Iscan being offered to its competitors, it called

on defendant to equalize the prices of all the Iscans which it sold, or failing in that, to permit plaintiff to purchase the 3.12 Iscan in lieu of the 3.14 Iscan at the same low price for its own use. This the defendant refused to do. Plaintiff was denied the benefit of the lower price on the 3.12 Iscan because the defendant, contrary to its long established freight policy, refused to equalize freight on the Iscans with plaintiff's Tampa plant. Instead, defendant insisted that plaintiff pay the freight on the shipments of Iscans from the plant in Baltimore where they were manufactured to Tampa, although it followed its old freight pricing policy[4] on all other size Iscans and sold Morgan Packing Company the same Iscan with freight equalized to its plant at Austin, Indiana. The fact that it was denied the benefit of the lower price on the 3.12 Iscan in the above manner made it financially impossible for plaintiff to purchase that particular Iscan along with its competitors.

As a result of the favorable lower price on their Iscans, Engelman Gardens and Morgan Packing Company were enabled to increase their production and to sell their Iscan juices at a lower price than plaintiff. However, in one year they overpacked and were unable to dispose of their stock. They were forced to carry over a large portion of their inventory into the next season and sell it at a loss. This caused a flooding of the market, and disrupted the trade to such an extent that plaintiff's sales of Iscans were greatly reduced and its business severely damaged.

It further appears that in February, 1942, the Government put into effect a war regulation known as Order M–81, which reduced the tinplate quota available to canners to 125% of their previous year's output; that the unlawful discriminations of the defendant had resulted in reducing the number of cans sold by the plaintiff in the base year 1940–41, and had the effect of restricting its can quota for a specified period, thereby causing substantial injury and damage to plaintiff.

Finally, it is practically without dispute that plaintiff, Bruce's Juices, throughout the years of its business activities had built up a good name, reputation and good will in the trade, which were of substantial and real value; that as a result of defendant's unlawful discriminations plaintiff's good will and reputation were injured and plaintiff sustained damage thereby.

We are of opinion that the quantity discount schedule of defendant and its subsequent classification of its customers into three arbitrary groups was unlawful and discriminatory. It becomes patent that under such system the discounts allowed by defendant to its largest customers were not permissible as being based upon actual differences in the cost of selling its customers or even classes of customers. In effect, they constituted discriminations in price between purchasers of commodities of like grade and quality. Manifestly, the discount system employed was not a good faith effort to devise a method whereby price discounts would be functionally available[5] to all customers. See Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196; Russellville Canning Co. v. American Can Company, D.C.W.D.Ark., 87 F. Supp. 484; Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219.

Here, during the period involved, only two of defendant's numerous customers were able to qualify in any year for the maximum 5% discount, and only about 1% received the benefit of any discount. Under such circumstances, the district court correctly found that the discount schedule was tainted with the inherent

---

4. The evidence reveals that for years defendant had maintained a policy of equalizing freight for a purchaser to the factory or plant nearest the point of delivery of the can shipment, irrespective of where the cans were manufactured. Plaintiff had many times theretofore purchased the 3.12 Iscan and other Iscans on the basis of this freight pricing policy.

5. In Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 68 S.Ct. 822, 826, 92 L.Ed. 1196, the Supreme Court, in condemning an arbitrary discount system similar to the one before us as discriminatory, stated: "Theoretically, these discounts are equally available to all, but functionally they are not".

vice of "too broad averaging", as a result of which it favored a few large customers at the expense of a multitude of small buyers, and that it was therefore unlawful and discriminatory. Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196; see also, Federal Trade Commission v. Staley Co., 324 U.S. 746, 65 S.Ct. 971, 89 L.Ed. 1338.

Certain it is that quantity discounts are not *per se* illegal or condemned by the anti-trust statutes. Nevertheless, any discount system, such as here, which arbitrarily excludes 98% of the customers involved from qualifying for any discount whatever imposes a heavy burden on its proponent to justify its continued existence. This burden defendant has here signally failed to meet.

We further find that under the evidence presented the granting of the runway allowance to Morgan Packing Company constituted an unlawful discrimination. The burden was upon the defendant to establish that the full amount of the runway allowance was justified by actual savings in the cost of delivery. In this connection, it was shown without dispute that all of the Iscans and a substantial portion of the grocery cans purchased by Morgan Packing Company from the defendant were manufactured at other plants than the plant at Austin, Indiana. The evidence is uncontradicted to the effect that many cans were transported to and stored in the Austin plant from other plants of defendant, and that the only method of delivering the cans to Morgan Packing Company, regardless of where the cans were made, was over the runway. Admittedly, there can be no reason for the granting of the runway allowance on those cans which were transported over the runway but were never manufactured at the Austin, Indiana plant. It therefore becomes patent that defendant has also failed to carry its burden of justification in this regard. See Russellville Canning Co. v. American Can Co., D. C., 87 F.Supp. 484.

There is substantial evidence in the record to support the findings as to the discriminatory practices by defendant in connection with the sale of the 3.12 Iscan. At practically the same time defendant was refusing to sell plaintiff the 3.12 Iscan manufactured at Baltimore with freight equalized to Tampa, in accordance with its long established freight pricing policy, it was selling the same can to Morgan Packing Company at the desired low price with freight equalized to Morgan's plant at Austin, Indiana. It was not shown that any of defendant's customers except plaintiff were ever required to pay freight on a shipment of the 3.12 Iscan. Moreover, plaintiff was not bound to purchase the 3.12 Iscan upon such terms in order to attain the status of a competing purchaser under the Act, as its failure to do so was directly attributable to defendant's own discriminatory practice.

The evidence conclusively reveals that plaintiff and its named competitors in both the grocery and Iscan juice trade were competing purchasers under the Act, and that the grocery cans and Iscans respectively were goods of "like grade and quality." U. S. v. American Linseed Oil Co., 262 U.S. 371, 43 S.Ct. 607, 67 L.Ed. 1035; U. S. v. Wallace, 116 U.S. 398, 6 S.Ct. 408, 29 L.Ed. 675; Federal Trade Comm. v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1009; Van Camp & Sons Co. v. American Can Co., 278 U.S. 245, 49 S.Ct. 112, 73 L.Ed. 311.

We have carefully reviewed the action of the district court in awarding damages in this case, and have reached the conclusion that the judgment rendered is fully in accord with the principles enunciated in the applicable authorities. See Bruce's Juices, Inc. v. American Can Company, 330 U.S. 743, 67 S.Ct. 1015, 91 L. Ed. 1219; Elizabeth Arden Sales Corporation v. Gus Blass Co., 8 Cir., 150 F.2d 988; see also Bigelow v. RKO Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652.

We find no reversible error in the record, and the judgment is accordingly

Affirmed.

BORAH, Circuit Judge, concurs in the result.