J. W. BURRESS, INCORPORATED,
Plaintiff,

v.

JLG INDUSTRIES, INC. (formerly
known as Fulton Industries,
Inc.), Defendant.

Civ. A. No. 79–0170.

United States District Court,
W. D. Virginia,
Roanoke Division.

March 11, 1980.

Charles D. Fox, III, Woodward, Fox & Wooten, Roanoke, Va., for plaintiff.

Edward Fitzpatrick, Lord, Bissell & Brook, Chicago, Ill., James F. Johnson, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendant.

**16**

OPINION

TURK, Chief Judge.

Plaintiff, J. W. Burress, Inc., sues JLG Industries, Inc., alleging violations of the federal antitrust laws and breach of contract. The case is now before the court on JLG's motion for judgment on the pleadings as to certain of Burress's claims of price discrimination in alleged violation of the Robinson-Patman Act. 15 U.S.C. § 13 *et seq.*

To the extent relevant here, the Robinson-Patman Act provides as follows:

It shall be unlawful for any person . . to discriminate in price between different purchasers of commodities of like grade or quality . . .; [However,] nothing herein contained shall prevent persons engaged in selling goods, wares or merchandise in commerce, from selecting their own customers in bona fide transactions and not in restraint of trade. . . .

15 U.S.C. § 13(a).

■ The court, for purposes of ruling on defendant's motion, must assume of course that the plaintiff's factual allegations are true. 2A Moore's Federal Practice ¶ 12.15 (2d ed. 1979).

Defendant JLG, a Pennsylvania corporation, is a manufacturer of self-lifting work platforms. These platforms are designed to position men, tools, or materials in elevated work areas. Pursuant to a contract with JLG, plaintiff Burress was a distributor for these products in southwestern Virginia until April 30, 1978.

In advancing its claims of unlawful price discrimination, plaintiff focuses on a time period commencing on March 22, 1976, the date of the execution of the final distributorship agreement between JLG and Burress, and ending on April 30, 1978, the date contractual relations ceased. Plaintiff Burress asserts basically two Robinson-Patman violations, both arising from events of this period of time.

■ The sufficiency of the first set of Burress's factual allegations of unlawful price discrimination—the allegations of paragraph 10 of the complaint—apparently is not disputed.[1] It will be useful briefly to review those allegations as a backdrop to the dispute now before the court. Paragraph 10 of the complaint alleges that during the latter half of 1977 and thereafter the plaintiff purchased several of the platform lift units from JLG. It is alleged that JLG provided these units to the plaintiff under different terms than it provided similar units to other purchasers. This practice, it is alleged, "had the effect of discriminating in price" between the plaintiff as a purchaser of the lift units and other purchasers of similar lift units of like grade and quality. These other purchasers allegedly were in competition with the plaintiff in interstate commerce. As noted already, the adequacy of these allegations is apparently not controverted.

The real dispute at this stage of the case concerns the viability of the allegations of paragraph 11 of the complaint.

In paragraph 11, the complaint sets forth another set of incidents which are said to give rise to liability under the Robinson-Patman Act. It is alleged that in September 1977 JLG "attempted to coerce" the plaintiff into entering a new distributorship agreement. The terms of the proposed new agreement "differed substantially" from those of the March 22, 1976 agreement, which in September 1977 was still in effect. The complaint states that "JLG offered this new contract to Burress while it was offering contracts which were substantially different in their terms to other purchasers

---

1. Defendant moves to dismiss the complaint to the extent that it alleges discrimination merely in the "terms" of a contract, not a discrimination in price. Paragraph 10 of the complaint is not objectionable on that ground since plaintiff does allege there that purchases of the units were made by plaintiff and other purchasers and that defendant's providing the units to plaintiff under "different terms" than it provides them to other purchasers "had the effect of discriminating in price. . . ." This adequately states a claim of price discrimination. *See Corn Products Co. v. Federal Trade Commission*, 324 U.S. 726, 740, 65 S.Ct. 961, 968, 89 L.Ed. 1320 (1945).

and distributors in competition with Burress. . . ." The contracts of other purchasers, it is alleged, were "discriminatory toward Burress" and the defendant's conduct "had the effect of increasing the price of the items Burress had purchased in the past or would purchase in the future. . . ."

Burress never accepted JLG's September 1977 offer of a new distributorship contract. The complaint does not allege that any purchases were ever undertaken pursuant to that proposal. Throughout the period of time concerned in paragraph 11 of the complaint, Burress apparently was still purchasing lift units pursuant to the terms of the old contract of March 22, 1976. Ultimately, the old distributorship agreement expired, whereupon contractual relations between Burress and JLG ceased.

Defendant JLG's dismissal motion rests on the language of the Robinson-Patman Act making it unlawful "for any person . . . to discriminate in price between different purchasers . . . ." 15 U.S.C. § 13(a). The defendant argues that since Burress never signed the proposed new contract of September 1977, Burress cannot be a "purchaser" as required by the Robinson-Patman Act. Defendant thus urges that the allegations of paragraph 11, depending, as they do, merely on the offer of a new distributorship agreement, must fail.

Defendant relies on cases such as *Shaw's, Inc. v. Wilson-Jones Co.*, 105 F.2d 331 (3d Cir. 1939) which disallow recovery where the plaintiff is only a potential purchaser and not an actual purchaser. In *Shaw's* the court was interpreting the portion of the Robinson-Patman Act upon which this case turns. The court said that

The discrimination in price referred to must be practiced "between different purchasers". Therefore at least two purchases must have taken place. The term purchaser means simply one who purchases, a buyer, a vendee. It does not mean

one who seeks to purchase, a person who goes into the market-place for the purpose of purchasing. In other words, it does not mean a prospective purchaser, or one who wishes to purchase . . . ..

105 F.2d at 333. In response to the argument of the plaintiff in *Shaw's* that it had been a customer and therefore had "purchaser" status under the Act, the *Shaw's* court stated: "Past purchases or conversations in respect to possible future purchases are insufficient." *Id.* Courts often have followed *Shaw's* in declining to equate offers to discriminate with actual price discrimination.[2]

Plaintiff Burress, on the other hand, maintains that the protection afforded by the Robinson-Patman Act is broader. Plaintiff concedes that there have been no purchases undertaken pursuant to the September 1977 proposed contract. Plaintiff's theory of recovery rests on the language of the Fifth Circuit in *American Can Co. v. Bruce's Juices, Inc.*, 187 F.2d 919 (5th Cir.), *op. mod. and pet. for reh'g denied*, 190 F.2d 73, *app. dismissed*, 342 U.S. 875, 72 S.Ct. 165, 96 L.Ed. 657 (1951): "[P]laintiff was not bound to purchase the 3.12 Iscan upon [discriminatory] terms in order to attain the status of a competing purchaser under the Act, as its failure to do so was directly attributable to defendant's own discriminatory practice." 187 F.2d at 924. Thus, Burress contends that *Bruce's Juices* permits a Robinson-Patman plaintiff "who is currently purchasing goods from the defendant and competing with other purchasers of goods from the defendant at the time of the price discrimination, to recover when the failure of plaintiff to purchase at the discriminatory price is directly attributable to the actions of the defendant. . . ."

Before analyzing the applicability of *Bruce's Juices* to the plaintiff's situation in this case, it may be useful to recall that the Robinson-Patman Act forbids discrimination in price only as it occurs between "dif-

---

2. *E. g., Klein v. Lionel Corp.*, 237 F.2d 13, 15 (3d Cir. 1956); *Naifeh v. Ronson Metal Works*, 218 F.2d 202, 206 & n. 6 (10th Cir. 1954); *Chicago Seating Co. v. S. Karpen & Bros.*, 177 F.2d 863, 867 (7th Cir. 1949). *See Bay City-Abraham Bros. Inc. v. Estee Lauder, Inc.*, 375 F.Supp. 1206, 1218 (S.D.N.Y.1974).

ferent purchasers." [3] The question for deci-
sion, then, is simply whether Burress can
assert status as a "purchaser" solely on the
basis of the September 1977 proposal.

■ It cannot meaningfully be said
that a "purchase" has occurred until buyer
and seller have completed their negotiations
and have in some way expressed their mu-
tual assent that legally enforceable expec-
tations and commitments arise. In short,
there must be a contract. It is sufficient
that the contract be merely executory; ac-
tual delivery and payment are not essential
to a "purchase" for Robinson-Patman pur-
poses. *Aluminum Co. of America v. Tan-
det,* 235 F.Supp. 111 (D.Conn.1964). But
legally enforceable commitments must be in
existence.

The exact nature of the contractual rela-
tions between the plaintiff and the defend-
ant in *Bruce's Juices* is not spelled out in
the Fifth Circuit's 1951 opinion with ex-
treme precision. It is far from clear that
the opinion, in light of the facts of the case,
permits recovery in the absence of purchas-
es. It is apparent, though, as was observed
in *Tandet,* 235 F.Supp. at 114, that *Bruce's
Juices* cannot be read "to authorize any
prospective buyer or offeree in the open
market to be a beneficiary under the Act."

In *Bruce's Juices,* the plaintiff discovered
that the defendant, a can manufacturer,
had been selling a particular type of can to
plaintiff's competitors at a secret discount.[4]
This can was known as the "3.12 Iscan."
When plaintiff learned of the secret dis-
count, it sought for itself the same low
price on the 3.12 Iscan or, in lieu of that, an

equivalent low price on a similar can. The
defendant refused to allow the plaintiff the
same low price on 3.12 Iscans as the plain-
tiff's competitors were getting. This, the
court said, "made it financially impossible
for plaintiff to purchase *that particular* Is-
can . . . ." 187 F.2d at 923 (emphasis
added). It does not appear from the Fifth
Circuit's opinion that the plaintiff ceased
purchasing cans from the defendant when
the defendant refused to allow the plaintiff
a lower price.[5] On the contrary, it would
appear that the plaintiff was purchasing
some other, similar size cans at the same
time as competitors were purchasing at a
discount the 3.12 Iscan.[6] This seems clear
from the court's statement, in summing up
the nature of the injury to the plaintiff in
*Bruce's Juices,* that "the discriminatory
higher price *paid by plaintiff for an Iscan
of like grade and quality* diminished its
profits and helped destroy its ability to
withstand competition." 187 F.2d at 922
(emphasis added).

Thus, liability in *Bruce's Juices* was not
premised solely on the defendant's refusal
to sell 3.12 Iscans to the plaintiff at the
price the plaintiff desired. The court sim-
ply recognized that the failure of the par-
ties to consummate a sale of 3.12 Iscans in
particular did not preclude recovery with
respect to the discriminatory pricing in
sales that *did* occur. And, as this court
reads *Bruce's Juices,* liability was based on
sales that *did* occur.

■ In sum, *Bruce's Juices* does not, in
this court's view, stand for the proposition

---

**3.** 15 U.S.C. § 13(a). *Bruce's Juices,* of course,
does not relax the "purchasers" requirement.
In allowing recovery, the court in *Bruce's
Juices* found the statutory mandate that the
plaintiff be a "purchaser" satisfied because the
plaintiff there had purchased other products
which were of "like grade and quality" as the
"3.12 Iscan" which plaintiff declined to pur-
chase. 187 F.2d at 924.

**4.** The facts of *Bruce's Juices* are reported in
187 F.2d at 920–23 and in the district court's
opinion in *Bruce's Juices v. American Can Co.,*
87 F.Supp. 985, 987–91 (S.D.Fla.1949).

**5.** Nor does it so appear from any of the numer-
ous other published opinions in the extended

litigation between the Bruce's Juices firm and
the American Can Company. *See Bruce's
Juices v. American Can Co.,* 330 U.S. 743, 67
S.Ct. 1015, 91 L.Ed. 1219 (1947) *aff'g* 155 Fla.
877, 22 So.2d 461 (1946); *Bruce's Juices v.
American Can Co.,* 87 F.Supp. 985 (S.D.Fla.
1949).

**6.** The district court's opinion indicates that Is-
cans were available in four slightly different
sizes. All Iscans were the same diameter, 2.02
inches, and they varied in height as follows:
3.00 inches, 3.09 inches, 3.12 inches, and 3.14
inches. 87 F.Supp. at 990.

that a plaintiff in Burress' position may recover under the Robinson-Patman Act without having contracted to purchase goods at a discriminatory price. The court has found no case that would go so far as to allow recovery for what the plaintiff here terms a "continuing discriminatory offer to sell." The threshold of Robinson-Patman liability is not reached until there have been two purchases—binding commitments to buy and sell—at discriminatory prices. Absent such binding commitments, the plaintiff suffers no injury for which the Robinson-Patman Act affords a remedy.

██ Paragraph 11 of the complaint in this case seeks to predicate Robinson-Patman Act liability upon the allegedly discriminatory offer of September 1977. That proposed new contract was never signed; it obviously created no legal commitments whatever; certainly no purchases transpired under it. In light of all the foregoing, this court is convinced beyond doubt that the plaintiff could prove no set of facts upon the allegations of paragraph 11 of the complaint which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80 (1957). Accordingly, the motion of the defendant for judgment on this portion of pleadings will be granted and the plaintiff will not, in further proceedings in this cause, be permitted to predicate any alleged violation of the Robinson-Patman Act upon the proposed new contract of September 1977.[7]

---

7. This ruling, of course, leaves plaintiff's other     antitrust and contract claims unscathed.