**CHATHAM BRASS CO., INC., Plaintiff,**

v.

**HONEYWELL INC., Defendant.**

**80 Civ. 2533 (WCC).**

United States District Court,
S. D. New York.

March 25, 1981.

Carter, Ledyard & Milburn, New York City, for plaintiff; Devereux Milburn, Robert A. McTamaney, Kenneth P. Clark, William H. Woolverton, III, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendant; Donald B. da Parma, Alan C. Drewsen, Beth A. Willensky, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This action was brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, seeking damages and injunctive relief for alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). The case is presently before the Court on defendant's motions to dismiss the complaint for failure to state a claim, Rule 12(b)(6), F.R.Civ.P., and to dismiss the third cause of action for failure to join necessary parties, Rule 12(b)(7), F.R. Civ.P.

*The complaint*

The complaint alleges that plaintiff Chatham Brass Co., Inc., a New Jersey corporation ("Chatham"), engages in two related lines of business: manufacturing of heating and air-conditioning equipment and selling to wholesale distributors electrical parts used by building contractors in installing residential heating and air-conditioning equipment. Defendant Honeywell, Inc. ("Honeywell") manufactures electrical equipment, including controls which automatically regulate the operation of residential heating and air-conditioning equipment ("controls"). Honeywell's line of controls includes (1) controls intended to be installed by equipment manufacturers in newly-manufactured equipment; (2) replacement controls, to be substituted for old or defective controls in existing equipment; and (3) general purpose controls, which may be used in a wide variety of applications. Replacement and general purpose controls are packaged individually. Under Honeywell's stated pricing policy, manufacturers of heating and air-conditioning equipment may purchase equipment from Honeywell at an Original Equipment Manufacturers' ("OEM") price, a price 20–40% lower than the wholesale price charged to distributors who purchase controls for resale. The complaint charges that although, under the terms of Honeywell's pricing policy, buyers seeking to purchase controls for resale should be charged the wholesale price, certain businesses competing with Chatham in the distribution aspect of Chatham's business have been purchasing controls for resale at the OEM price, while Chatham has been barred by Honeywell since May 7, 1976 from purchasing at other than the wholesale price. In addition, Chatham contends that its competitors have been granted rebates and "policy credits," while Chatham has been denied such benefits. Chatham states that it has thereby been forced to purchase controls from other, favored distributors, who, having purchased controls from Honeywell at the OEM price, can resell them to Chatham at a price lower than the wholesale price set by Honeywell. The complaint indicates that the favored distributors receive these pricing benefits from Honeywell in return for their agreement to limit their resales of Honeywell controls to the Northeast Zone (defined as the United States east of Pittsburgh, Pennsylvania and north of Virginia), a region which Honeywell allegedly seeks to saturate with its products.

In the first cause of action, Chatham asserts that Honeywell's actions amount to discriminations in price between similarly situated purchasers, resulting in a substantial lessening of competition among distributors of controls, a tendency to create a monopoly in the manufacture and sale of controls and impairment of Chatham's ability to compete with other distributors of controls, all in violation of Section 2(a) of the Robinson-Patman Act.

In the second cause of action advanced in the complaint, Chatham contends that Honeywell has attempted to monopolize the controls manufacturing market in the Northeast Zone by:

(1) prohibiting resale of its controls outside the Northeast Zone;

(2) prohibiting resale to third parties who were believed by Honeywell to be reselling outside the Northeast Zone;

(3) selling controls to customers other than Chatham at extremely reduced prices due to trade-in allowances, quantity discounts, policy credits, rebates, extended billing terms and additional control features;

(4) discriminatorily applying the two-tier OEM and wholesale price system by granting OEM status to purchasers who Honeywell knows or should know are buying for resale rather than for incorporation into manufactured products, and discriminatorily granting rebates and "policy credits" to (1) induce purchasers to buy and distribute large quantities of Honeywell controls, leading to saturation of the Northeast Zone with Honeywell products; and (2) favor those who dealt solely with Honeywell and who agreed to limit their sales to the Northeast Zone, thus contributing to saturation of that market.

Chatham asserts that by these means Honeywell has gained control of 60%, measured by gross sales, of the market, for controls in the Northeast Zone, 75% of the market for general purpose and replacement controls in that region, and 90% of the sub-market for general purpose and replacement thermostats for furnaces, boilers, unit heaters and central air-conditioning units. Chatham alleges that it has been injured by these anticompetitive acts in the controls manufacturing market because the result of these acts has been to increase the cost to Chatham of purchasing controls for distribution.

In the third cause of action, Chatham charges that Honeywell has conspired with certain of Chatham's competitors, who are not identified, to enforce Honeywell's OEM/wholesale dual pricing system in a discriminatory manner. In particular, Chatham alleges that:

(1) Honeywell and Chatham's competitors have agreed that Honeywell will sell and the alleged co-conspirators will purchase heating and air-conditioning equipment controls at OEM prices, although both seller and buyer knew that the co-conspirators did not intend to install these controls in equipment to be manufactured by them; and

(2) the purpose of the alleged conspiracy has been to establish a distribution network in the Northeast Zone which would saturate that region with Honeywell controls.

As a result, the complaint recites, Honeywell has engaged in discriminatory pricing favoring distributors other than plaintiff, prices of controls have stabilized at noncompetitive levels and Chatham has been forced to purchase controls at prices higher than those it otherwise would have had to pay and higher than those paid by its competitors.

### Contentions

Honeywell's first argument is that Chatham has failed to plead any injury cognizable under the antitrust laws, since what Chatham alleges is in effect a claim that it has been prevented from misusing Honeywell's pricing system by buying Honeywell controls intended for resale at OEM prices; purchasing controls at OEM prices when the controls were intended for resale would be an abuse of the Honeywell pricing system injurious to competition; and Chatham's inability to engage in such abuse, although it might cause economic injury to Chatham, does not diminish competition

and thus does not lead to "injury of the type the antitrust laws were designed to prevent," *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

Second, Honeywell argues that Chatham's Robinson-Patman Act claim is barred by the statute of limitations, since Chatham has failed to allege that it made any purchases from Honeywell within the last four years, *Leist v. Union Oil Co.*, 470 F.Supp. 246 (E.D.Wis.1979), and since Chatham cannot maintain a price discrimination claim based merely on disparity between the price defendant charged another purchaser and the price Honeywell indicated it would offer to Chatham if Chatham applied to become a wholesale purchaser, citing *Bruce's Juices, Inc. v. American Can Co.*, 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947), and *Highspire, Inc. v. UKF America, Inc.*, 469 F.Supp. 1009 (S.D.N.Y.1979).

Third, Honeywell argues that Chatham lacks standing to press a Robinson-Patman Act claim as an indirect purchaser, since the indirect purchaser doctrine under the Act permits an action (1) by a disfavored direct-buying retailer in competition with other retailers when a price advantage granted to wholesalers is passed on to those other retailers, *Perkins v. Standard Oil Co.*, 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969); or (2) by customers of wholesalers who receive a less favorable price than direct-buying retailers when those wholesalers pass the disadvantage on to their customers, so that the customers are injured in their ability to compete with direct-buying retailers, *FTC v. Fred Meyer, Inc.*, 390 U.S. 341, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968), but not by a plaintiff like Chatham who is merely an indirect purchaser from an allegedly favored customer of the defendant, *Schwimmer v. Sony Corp. of America*, 637 F.2d 41 (2d Cir., 1980); *FLM Collision Parts, Inc. v. Ford Motor Co.*, 543 F.2d 1019 (2d Cir. 1976), *cert. denied*, 429 U.S. 1097, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977).

Fourth, Honeywell argues that Chatham lacks standing to press Sherman Act claims under either Section 1 or Section 2 of that Act. As to the attempted monopoly claim, Honeywell asserts that the facts alleged indicate direct injury to Honeywell's competitors at the *manufacturing* level. Any injury to Chatham from the attempted monopolization, Honeywell contends, is thus outside the target area of the alleged illegal acts and is too remotely linked in terms of causation to those acts to give rise to liability, citing *Reading Industries, Inc. v. Kennecott Copper Corp.*, 631 F.2d 10 (2d Cir. 1980), *GAF Corp. v. Circle Floor Co.*, 463 F.2d 752 (2d Cir. 1972) and *Calderone Enterprises v. United Artists*, 454 F.2d 1292 (2d Cir. 1971), *cert. denied*, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972). Furthermore, Honeywell maintains that Chatham, which, by its own allegations, has been buying controls from favored customers of Honeywell rather than directly from Honeywell, is no more than an indirect purchaser of such controls complaining of an overcharge, and is thus barred from maintaining Sherman Act claims against Honeywell under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

Finally, Honeywell argues that, even if Chatham's Section 1 claim falls within a vertical conspiracy exception to *Illinois Brick*, Chatham is not entitled to recover here because it has failed to join necessary parties, namely, the alleged co-conspirators with Honeywell, leaving open the possibility of inconsistent judicial rulings on the existence of a vertical conspiracy, *In re Beef Antitrust Litigation*, 600 F.2d 1148, 1163 (5th Cir. 1979), *cert. denied*, —— U.S. ——, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980).

In response, Chatham asserts that it has alleged that *other* purchasers from Honeywell have bought controls at the wholesale price, while favored customers have purchased controls intended for resale at the OEM price, within the four-year statute of limitations period, satisfying the two-purchaser rule; and that a party injured by price discrimination need not be a purchaser from Honeywell to have a Robinson-Patman Act claim under, *e. g., Big Value Stamp Co. v. Sperry & Hutchinson*, 1967

Trade Cases ¶ 71,978 (S.D.Ohio 1978), *Little-john v. Shell Oil Co.*, 483 F.2d 1140 (5th Cir.), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973), or *Eye Encounter, Inc. v. Contour Art, Inc.*, 81 F.R.D. 683, 688 (E.D.N.Y.1979). In addition, Chatham asserts that it has standing to press its Robinson-Patman Act claims under the indirect purchaser rule of *Kraft-Phenix Cheese Corp.*, 25 F.T.C. 537 (1937), as expanded by the Supreme Court in *FTC v. Fred Meyer, supra*, and *Perkins, supra*, and as applied by this Court in, *e. g., Julius Nasso Concrete Corp. v. Dic Concrete Corp.*, 467 F.Supp. 1016 (S.D.N.Y.1979), and that, since a foreseeable effect of Honeywell's alleged price discrimination in favor of certain customers was injury to nonfavored customers, Chatham was within the target area of Honeywell's price discrimination, *Schwimmer, supra.*

As to standing to assert the attempted monopolization claim, Chatham argues that, again, it need only plead injury plus causation, *i. e.*, that the injury was in the foreseeable target range of damage to be caused by Honeywell's acts; that Chatham's business as a purchaser of manufactured parts put it within the target area of the alleged attempted monopolization, with resulting effect on prices, of the manufacturing level in the distribution chain; and that it therefore has standing to sue under, *e. g., Commerce Tankers Corp. v. National Maritime Union*, 553 F.2d 793 (2d Cir.), *cert. denied*, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 28 (1977); *Billy Baxter Inc. v. Coca-Cola Co.*, 431 F.2d 183 (2d Cir. 1970), *cert. denied*, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971).

Chatham responds to Honeywell's *Illinois Brick* argument by stating (1) that, unlike the situation in *Illinois Brick*, the plaintiff here is not complaining of price fixing or of an overcharge it was forced to pay, but rather (2) that Chatham is complaining of a conspiracy to discriminate among Honeywell's customers so as to enlarge Honeywell's market share, and (3) that consequently, the sole issue in *Illinois Brick* —the "passing on" to the plaintiff of an overcharge by a middleman—is not at issue here. In addition, Chatham contends that

*Illinois Brick* does not, in any event, bar claims for injunctive relief. *In re Beef Industry Antitrust Litigation, supra.*

Finally, Chatham contends that, as a matter of law, it does not have to join as defendants all members of an alleged conspiracy to violate the antitrust laws so long as the existence of such co-conspirators is set forth in the complaint. *Eye Encounter, supra; Martin v. Chandler*, 85 F.Supp. 131 (S.D.N.Y.1949).

*Discussion*

1. Price Discrimination

a. Legal Standard

Section 2(a) of the Robinson-Patman Act provides, in relevant part:

> "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchasers involved in such discrimination are in commerce ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them ...."

(i) Two-purchaser rule

In order to state a claim under this section, a plaintiff must allege that two sale transactions have taken place. *Bruce's Juices v. American Can Co.*, 330 U.S. 743, 755, 67 S.Ct. 1015, 1020, 91 L.Ed. 1019 (1947); *Highspire, Inc. v. UKF America, Inc.*, 469 F.Supp. 1009 (S.D.N.Y.1979) (seller must make two actual sales to different purchasers at different prices for act to apply). Allegations claiming discrimination between the price paid in an actual sale and the price quoted in an offer do not satisfy the statutory requirement that two "purchases" occur, *J. W. Burress, Inc. v. JLG Industries, Inc.*, 491 F.Supp. 15 (W.D.Va.

1980); *Highspire, supra,* 469 F.Supp. at 1012, even though a plaintiff alleges that its failure to buy from defendant and thus to create a second actual sale was directly attributable to defendant's discriminatory practice in offering to sell at an unfavorably high price. *Burress, supra,* 491 F.Supp. at 17–19.

### (ii) Statute of Limitations

15 U.S.C. § 15b provides that actions under Section 2(a) must be brought within four years from the time the cause of action accrued. A cause of action accrues and the statute of limitations begins to run on the date plaintiff is damaged, *Woodbridge Plastics, Inc. v. Borden, Inc.,* 473 F.Supp. 218 (S.D.N.Y.), aff'd, 614 F.2d 1293 (2d Cir. 1979); in price discrimination cases, the plaintiff is damaged and his cause of action normally accrues on the date he is sold a commodity at a discriminatory price. *Leist v. Union Oil of California,* 470 F.Supp. 246, 247 (E.D.Wis.1979).

### (iii) Standing

Initially, the courts interpreted Section 2(a) as conferring standing only when discrimination occurred between two direct purchasers from the alleged discriminator. See, *e. g., Klein v. Lionel Corp.,* 237 F.2d 13 (3d Cir. 1956). Later, the doctrine of standing under Section 2(a) was broadened to prevent sellers from shielding themselves from liability for price discrimination by interposing middlemen between the seller and the eventual purchaser. In *Perkins v. Standard Oil Co.,* 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969), for instance, the Supreme Court read Section 2(a) as encompassing a claim by a direct-purchasing retailer who complained of injury resulting from the defendant's sales at lower prices to a wholesaler who resold to another distributor who in turn resold to a retailer in competition with plaintiff. The plaintiff alleged that the lower price which the defendant granted to the favored wholesaler had been passed on to the second-tier purchaser, a subsidiary of the original favored purchaser, and then on again to the retailer in competition with the plaintiff, and that the resulting competitive harm destroyed the plaintiff's ability to compete and eventually forced him to sell his business. The *Perkins* Court also indicated that a plaintiff could have a Section 2(a) claim where, as in *FTC v. Fred Meyer, Inc.,* 390 U.S. 341, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1961), a retailer purchasing from the defendant through a wholesaler was injured in his ability to compete with a retailer buying directly from the defendant due to price discrimination in favor of the latter retailer.

The *Meyer* and *Perkins* line of cases was called into some question, however, by the Supreme Court's later ruling in *Illinois Brick, supra,* that indirect purchasers could not claim damages under Section 1 of the Sherman Act, 15 U.S.C. § 1, for price increases passed along to those purchasers by direct purchasers dealing with the alleged antitrust law violator. The Court gave two principal reasons in support of its decision: the serious risk of multiple liability for the defendants, or of inconsistent adjudications, if both the direct purchaser and indirect purchasers sued the defendant for price overcharges and the defendant was barred under *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), from asserting as a defense that the direct or intermediate-level purchaser had passed along the alleged overcharge to its customers; and the uncertainties, difficulties and expense of tracing the passing on of an overcharge and distinguishing such passed-on costs from other, legitimate changes in price each time price-fixed goods changed hands.

In *Schwimmer, supra,* the Second Circuit addressed the issue of whether an indirect purchaser still has a cause of action under Section 2(a) after *Illinois Brick* as part of a general discussion of standing to sue under Section 2(a). The court suggested that, while, under *Illinois Brick,* the court could not assume that the original seller's overcharge was automatically passed on to successive customers (giving *all* indirect purchasers standing), it also recognized an obligation to "guard against a situation in

which a seller interposes a middleman as a shield against antitrust liability," at 48. Thus, the court indicated, an indirect purchaser would have standing to sue if, considering the anticompetitive purpose or effect of the seller's price discrimination, the seller's control over the resale price to the indirect purchaser, and the corporate relationship (e. g., parent-subsidiary) between the seller and the middleman, it appeared that "the discrimination was 'aimed at' the indirect purchaser by virtue of the nature and foreseeable effect of the antitrust conspiracy." *Id.* at 49. In *Schwimmer*, plaintiff alleged that his company, Supersonic, a Sony dealer purchasing Sony products through Sonam, Sony's exclusive distributor in the United States, was injured as a result of Sony's price discrimination against Sonam and in favor of Interocean, Sony's distributor for Central and South America. The court ruled that Schwimmer lacked standing to press a Section 2(a) claim, since there was nothing in the record to indicate that Supersonic purchased directly from Sony, that Sony's alleged price discrimination between Sonam and Interocean was directed specifically at Supersonic, or that Sony controlled resale prices by Sonam or others purchasing directly from Sony.

b. Application

■ Here, plaintiff does not allege that it directly purchased any products from defendant during the four years immediately preceding the filing of the complaint, the limitation period. While plaintiff does allege that it purchased directly from defendant at some time prior to the four years preceding the filing of the complaint, plaintiff makes no allegations of fraudulent concealment by defendant which could toll the running of the statute of limitations to bring those purchases within the four-year limit; moreover, its allegations are that it made its prior direct purchases at a *favored*, rather than an unfavorable, price. Thus, plaintiff is barred from making a Robinson-Patman Act claim based on its own purchases, see *Leist, supra*, and may press such a claim only if it has standing to sue as an indirect purchaser under the target area test applied in *Schwimmer, supra*.

■ However, the facts pleaded do not support a claim that the price discrimination in question was "aimed at" injuring plaintiff. First, Chatham is not a competitor of Honeywell on the manufacturing level, as was the plaintiff in *Eye Encounter, supra*, so Chatham will not be directly affected by, e. g., any success of Honeywell's scheme in attracting customers. Second, Chatham did not purchase indirectly from Honeywell through a *disfavored* direct purchaser, as did the plaintiff in *FTC v. Fred Meyer, supra*, and injury to Chatham is not a foreseeable result of granting a favorable price to Chatham's supplier and an unfavorable price to other distributors with whom Chatham did not deal. In other words, since Chatham has alleged that it purchased from a *favored* direct purchaser, it cannot claim a sufficiently direct causal connection between the alleged price discrimination and its injury to satisfy the standing requirements of Section 4 of the Clayton Act, see *Schwimmer, supra*; these facts suggest, not injury through an indirect purchase, but injury resulting from Honeywell's determination to sell directly to Chatham only at the higher wholesale price—injury which, for reasons discussed above, does not state a Robinson-Patman Act claim.

■ Chatham has further failed to allege any facts indicating that Honeywell had control over the terms of resale from favored wholesalers to Chatham, or that favored wholesalers were mere "dummy" corporations acting on behalf of Honeywell, see *Schwimmer, supra*, at 49, n.17; *American News Co. v. FTC*, 300 F.2d 104, 109–10 (2d Cir. 1962), giving Chatham a claim against Honeywell as the party actually determining the terms of the sales between Chatham and its supplier. Rather, it appears that, as in *Schwimmer, supra*, and *Julius Nasso Concrete Corp., supra*, Chatham is attempting to stretch the indirect purchaser doctrine beyond its appropriate bounds, and in fact, precisely as in *Julius Nasso, supra*, 467 F.Supp. at 1021, to liti-

gate as price discrimination claims issues which properly should be raised under different sections of the antitrust laws, see discussion *infra*. Accordingly, Honeywell's motion to dismiss this portion of the complaint is granted.

## 2. Section 2 claims

■ At issue here on these claims is whether Chatham may complain of an attempted monopolization if it is not a direct competitor of the alleged attempting monopolizer, but suffers injury only as a direct or indirect purchaser from Honeywell. *Illinois Brick* does not bar a damages claim based on such facts, since Chatham is complaining, not of injury resulting from the passing on of a price-fixing overcharge by a middleman, but rather of direct injury from Honeywell's alleged success in creating sufficient monopoly power to raise prices; the proof required does not raise the difficulties foreseen in *Illinois Brick* of separating out passed-on overcharges from legitimate price increases imposed by a middleman, but rather is limited to a comparison of the prices Chatham actually paid for goods to the prices it would have paid if Honeywell had not attempted to monopolize this market. *Dart Drug Corp. v. Corning Glass Works*, 480 F.Supp. 1091, 1101 (D.Md.1979).

Furthermore, accepting Chatham's allegations as to the nature and method of the conspiracy as true, as the Court must on a motion to dismiss, it appears that Chatham is within the target area of the alleged attempted monopolization, both as a past and would-be future direct purchaser from Honeywell and as an indirect purchaser, through a favored distributor, of the manufactured products whose price Honeywell allegedly affected by reason of its attempted monopolization. See *Berkey Photo v. Eastman Kodak*, 603 F.2d 263, 294 (2d Cir. 1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980) (purchaser of product whose price is affected by defendant's monopolization has standing to bring Section 2 claim); *cf. Reading Industries,*

*Inc. v. Kennecott Copper Corporation*, 631 F.2d 10, at 14 (2d Cir., 1980), (if allegations are that conspirators reduced would-be purchasers' opportunity to buy by restricting output, those purchasers denied an opportunity to buy from defendants would be in the target area).

Honeywell's motion to dismiss this aspect of Chatham's claims is therefore denied.

## 3. Section 1 claims

■ Chatham's Section 1 claims boil down to an allegation that Honeywell conspired with certain unnamed distributors to (1) set territorial limits on resales of Honeywell's controls to achieve a monopoly position for Honeywell's products in the Northeast Region, and (2) exclude noncooperating purchasers such as Chatham from that market. In so doing, Chatham alleges, Honeywell has injured it by denying it favorable pricing and by causing the general market prices of controls to stabilize at levels higher than they otherwise would have reached, so that Chatham has been forced to purchase controls at prices higher than it otherwise would have had to pay. *Illinois Brick* does not apply at all to this factual situation: this is not a claim by a plaintiff injured only by virtue of its status as an indirect purchaser; rather, it is a claim by a plaintiff asserting that it has been forced to assume the status of an indirect purchaser and to bear the additional costs incident to that status as a direct result of a conspiracy whose purpose and effect was to exclude it and other noncooperating distributors from favored purchaser status, in violation of the antitrust laws. Since this is not an *Illinois Brick* situation, (*i. e.*, Chatham's standing to complain of the acts alleged does not rest on its position as an indirect purchaser), it need not name the alleged co-conspirator distributors described in its complaint as parties defendant to maintain this cause of action. *Eye Encounter, supra*, 81 F.R.D. at 689.[1] Honeywell's motion to dismiss the third cause of action is also denied.

1. It is obvious from the preceding discussion that, as to both the Section 1 and 2 claims, Chatham's allegations adequately plead the injury to competition required by *Brunswick Corp., supra.*

*SUMMARY*

Chatham's first count alleging violations of Section 2(a) of the Robinson-Patman Act is dismissed. Honeywell's motions to dismiss the second and third counts of the complaint are denied.

SO ORDERED.