**Robert A. STEVENS, d/b/a Bob Stevens Appliances, Plaintiff,**

v.

**ZENITH DISTRIBUTING CORPORATION OF KANSAS and Zenith Radio Corporation, Defendants.**

No. 78–0477–CV–W–6.

United States District Court, W.D. Missouri, W.D.

Aug. 18, 1983.

William J. Burrell and Duane J. Fox, Burrell, Seigfreid & Bingham, P.C., Kansas City, Mo., for plaintiff.

F. Philip Kirwan, Terry L. Tyrrell, Margolin & Kirwan, Kansas City, Mo., for defendant Zenith Distributing Corp. of Kansas.

Philip J. Curtis, Edward McCausland, Glenview, Ill., for Zenith Radio Corp.

## MEMORANDUM AND ORDER LIMITING PLAINTIFF'S PROOF OF ALLEGED DAMAGES

SACHS, District Judge.

Defendants have filed a motion that would drastically limit plaintiff's proof in this Robinson-Patman case, scheduled for early trial. Plaintiff's major contention in this case is that, as a distributor of defendants' products, he suffered price discrimination for several years and then elected in February, 1977, to begin purchasing similar products from other suppliers. Price discrimination damages in the amount of $38,048 (before trebling) are sought for the period in which plaintiff served as a distributor. Plaintiff also seeks $1,448,542 (before trebling) in alleged lost profits for the period from 1977–1982, after he gave up the distributorship.

Defendants seek an *in limine* ruling that plaintiff could not recover for profits that he contends he would have made if he had continued to make purchases from defendants and the pricing policy had been modified in his favor. In the alternative, defendants ask the Court to limit the proof of lost profits to the period (some eighteen months) in which plaintiff continued to operate as an individual sole proprietor. The business was later incorporated, to ease the transition of the business in the event of plaintiff's retirement or death.

Plaintiff apparently seeks to prove damages as though he were complaining of the constructive termination of his distributorship. The gist of the complaint, however, is price discrimination, and plaintiff relies solely on alleged "violations of the Robinson-Patman Act, 15 U.S.C. § 13 *et seq.*" Complaint, paragraph 11 (Count I), paragraph 6 (Count II).

A price discrimination complaint is directed toward actual sales transactions; it cannot be presented by a potential customer who *fails* to make purchases because he objects to a potential seller's pricing policies, or where the lack of consummated sales is otherwise simply "attributable" to the "discriminatory practice." A contrary holding by the Fifth Circuit (*American Can Co. v. Bruce's Juices, Inc.,* 187 F.2d 919, 924 (5th Cir.1951), *reh'g. granted,* 190 F.2d 73 (5th Cir.1951), *cert. dis.,* 342 U.S. 875, 72 S.Ct. 165, 96 L.Ed. 657 (1951)) is considered "an aberration," although arguably good public policy. See, *e.g., M.C. Mfg. Co. v. Texas Foundries, Inc.,* 517 F.2d 1059, 1065 (5th Cir.1975), *cert. den.,* 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976); *Republic Packaging Corp. v. Haveg Industries,* 406 F.Supp. 379, 381 (N.D.Ill.1976); Hansen, "Robinson-Patman Law," 51 Fordham L.Rev. 1113, 1126 n. 79 (1983).

If the claim for future profits were allowed in this context, it would apply not only to the plaintiff, who had several years' experience selling defendants' products, but would equally apply to a plaintiff who quits defendants after thirty days, in protest against their pricing policies. Even a potential customer (like the corporation formed by plaintiff in 1978) might similarly make a multi-million dollar claim. Whatever logical analogy may be made to a constructive termination case, under the antitrust laws or otherwise, the absence of any support for plaintiff generated during the nearly fifty years of experience with the Robinson-Patman Act convinces me that such generous remedies are not available under that legislation. If a theoretical label needs to be placed on the rejection of the novel claim, perhaps it should be categorized as too "indirect" or "remote" from the offending sales transactions. Only direct, proximate losses may be remedied under the antitrust laws. *Associated General Contractors of California v. California State Council of Carpenters,* —— U.S. ——, 103 S.Ct. 897, 910–13, 74 L.Ed.2d 723 (1983).

Plaintiff's search for supporting authorities has produced essentially one offering: *Perkins v. Standard Oil Co. of California,* 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969). That case basically holds, however, that "fourth level" injuries are compensable under the Robinson-Patman Act.

It further permits recovery of individual losses of brokerage fees *during the period of price discrimination,* even though the individual plaintiff was not the direct victim of discrimination. Justice Marshall dissented from this last holding, saying "[t]he law under the Robinson-Patman Act is convoluted enough without the addition of numerous explicit and implicit holdings which may come back to bedevil us in future years." l.c. 652, 89 S.Ct. at 1876. While there are references in that litigation to a claim for injury to the "going concern value" of Perkins' business (*Standard Oil Company of California v. Perkins,* 396 F.2d 809, 815 (9th Cir.1968)) the reported decisions do not show the evidentiary basis for the claim. Nothing indicates use of data subsequent to the period of the sales giving rise to litigation. There is simply no price discrimination case law which is fairly usable in support of this plaintiff's claim for lost future profits.[1]

The trend of the law regarding Robinson-Patman damages is not encouraging to plaintiff's theory. It is true that the Supreme Court very recently reaffirmed the view that the Robinson-Patman Act is remedial legislation which should be construed liberally. *Jefferson County Pharmaceutical Association v. Abbott Laboratories,* — U.S. —, 103 S.Ct. 1011, 1017, 74 L.Ed.2d 882 (1983). Though widely criticized, it is enforced as protective legislation designed to help small businesses remain healthy and afloat. l.c. 1023. The Supreme Court has, however, elected against adopting a generous method of ascertaining damages. *J. Truett Payne Co. v. Chrysler Motors Corp.,* 451 U.S. 557, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981). It accepted Judge Learned Hand's ruling against allowing "automatic damages" measured by the amount of the price differential. *Enterprise Industries v. Texas Company,* 240 F.2d 457 (2d Cir.1957). If "automatic damages" were deemed too generous as a matter of law, it would be surprising if the novel enlargement of damage potential suggested by this plaintiff were adopted.

It is therefore ORDERED that plaintiff's damage proof at trial as to price discrimination shall be limited to the period during which plaintiff was making purchases from defendants, and shall not include claims for hypothetical lost profits on hypothetical sales subsequent to February, 1977.[2]

---

1. Additional difficulties may be mentioned for consideration if this ruling is reviewed on appeal. It may still be arguable in this Circuit that a future profit claim based on a plaintiff's continuing employment life expectancy should not be made even for a wrongful antitrust termination. Evidence of future profits is normally offered as one of the elements needed for capitalization into lost going concern value. *Albrecht v. Herald Company,* 452 F.2d 124, 128–29 (8th Cir.1971). Unlike an employment termination case, a "life annuity" is not allowable *as recovery for an antitrust violation,* since "[t]he injury is to the business and not to the person." l.c. 131. The "life annuity" method of calculating damages seems to have been allowed, however, in such later cases as *Lehrman v. Gulf Oil Corp.,* 500 F.2d 659, 663–64 (5th Cir.1974) and *Arnott v. American Oil Co.,* 609 F.2d 873 (8th Cir.1979), *cert. den.* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980).

Senior Judge Gibson's comment in *Albrecht* may, however, still have appeal to some members of the reviewing court. In the present case, moreover, plaintiff's business "lifetime" as a sole proprietor may be deemed to have ended when the corporation was formed. The absence of a corporate claim for its losses as a possible future customer might thus serve to limit any recovery.

2. Recognizing the monetary significance of this ruling, I note that it is necessarily interlocutory and that plaintiff will have a further opportunity, either orally or through further citations, to persuade me to change the views expressed above, which are, however, at this point firmly held. Perhaps plaintiff will give up hope at this level and will reserve his contention for settlement value or appeal.